STATE OF NORTH CAROLINA v. MARCUS WARREN HOLSCLAW, JR.

No. 7914SC339

(Filed 4 September 1979)

1. **Homicide § 23.2— proximate cause—error in instructing on brain death statute**

The trial court in a homicide case erred in instructing the jury on the brain death statute, G.S. 90-322, since the purpose of the statute is not to protect criminal assailants but is to provide a legal procedure for physicians to terminate life support functions where no brain function exists without incurring civil or criminal liability; however, the error was favorable to defendant, and he has no cause to complain thereof.

2. **Homicide § 23.2— voluntary manslaughter—instructions on proximate cause**

The trial court sufficiently charged the jury on proximate cause in its instructions on voluntary manslaughter in this homicide prosecution wherein defendant contended that the sole cause of death was the termination of life

support systems by medical authorities rather than the shooting of deceased by defendant.

**3. Criminal Law § 87.2 — exclusion of leading question**

 The trial court properly sustained the State's objection to a leading question asked defendant on direct examination as to whether he felt "that he was going to attack you."

**4. Criminal Law § 75.7 — on-the-scene investigation — no custodial interrogation — Miranda warnings not necessary**

 Where an officer who arrived at the scene of a shooting was told that the man who did the shooting was in defendant's apartment, the officer entered the apartment and asked defendant, "Where is the gun?", defendant pointed to the couch, and a rifle was in plain view on the couch, the officer's question to defendant was not a custodial interrogation but was merely an on-the-scene investigation of an emergency situation, and defendant's response thereto and the rifle were properly admitted in evidence although defendant had not been given the *Miranda* warnings prior to the officer's question.

**5. Criminal Law § 48 — silence after Miranda warnings — admissibility to show chronology of investigation**

 The court did not err in the admission over objection of testimony that defendant refused to make a post-Miranda warning statement while in custody on a certain date since (1) such testimony had previously been admitted without objection, and (2) defendant's silence on that date was not used to impeach statements later made by defendant while in custody but was used only to show the chronology of the. investigation.

APPEAL by defendant from *Hobgood, Judge*. Judgments entered 31 August 1978 in Superior Court, DURHAM County. Heard in the Court of Appeals 21 August 1979.

The defendant was charged in a bill of indictment with the second degree murder of Conway Luther Chisenhall. When this case came on for trial, the defendant consented also to be tried upon a bill of information charging him with assault on Willie T. Chisenhall with a deadly weapon inflicting serious bodily injury with intent to kill. Upon pleas of not guilty, the State offered evidence tending to show the following.

In the early morning. of 17 November 1977, Conway Luther Chisenhall and his cousin, Willie T. Chisenhall, went to visit Mae Nash, a friend, at a duplex located at 806 Park Avenue. The defendant occupied one side of the duplex and Mae Nash the other.

Willie T. Chisenhall testified that they knocked on the door of Mrs. Nash's apartment and received no answer. The defendant then came to the door of his apartment and asked the Chisenhalls what they were doing. Conway told him, "I don't think it's none of your business." The defendant then shot both Conway and Willie and called for an ambulance. Police and medical personnel arrived shortly. On directions from Willie, one of the police officers found the defendant in his apartment. The officer found a rifle on the couch. He arrested the defendant. Willie and Conway were taken to the hospital.

When he arrived at the hospital emergency room, Conway had no pulse, heartbeat or blood pressure. Five or six minutes passed before Conway's heartbeat was revived. His pupils were still dilated. His respiration was minimal. He had no spontaneous movement. An operation was then performed to repair the gun-shot damage. After the operation, doctors discovered Conway's kidneys were not functioning. He was put on a dialysis machine for his kidneys, a respirator to maintain his breathing and was given continuous injections to keep his heart beating. An encephalogram revealed no brain activity. By 21 November, Conway had no response to pain, no reflex activity and no ability to breathe on his own. The attending physicians agreed that brain death had occurred. The wife was informed and voiced no objection to the removal of the life support systems.

An autopsy was performed on 22 November 1977. Conway's brain was very soft, mushy, heavy and crumbly. This finding indicated the brain was dead some days prior to the discontinuance of the life support systems. The pathologist attributed death to cardiac arrest occasioned by the interruption of the normal flow of blood due to the gunshot wound which resulted in brain death.

The defendant offered testimony to the effect that he fired in self-defense.

From a verdict of guilty of voluntary manslaughter and assault with a deadly weapon inflicting serious injury, the defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Joan H. Byers, for the State.*

*Eric C. Michaux and Robert Brown, Jr., for defendant appellant.*

VAUGHN, Judge.

Two assignments of error are brought forward by the defendant on the trial judge's instruction to the jury. Both deal with the issue of proximate cause. We find no merit in these arguments.

"Proximate cause is an element of second degree murder *and* manslaughter." *State v. Sherrill,* 28 N.C. App. 311, 313, 220 S.E. 2d 822, 824 (1976). The acts of the defendant must be a real cause, a cause without which the decedent's death would not have occurred. The weight of the evidence supports the apparent jury conclusion that the defendant's acts were the proximate cause of death. The jury could but was not required to find that the sole cause of death was the termination of life support systems by medical authorities rather than the shooting by the defendant.

[1] The trial judge was overly careful in his instruction on proximate cause. He instructed at length on brain death. There was no need for this. The statute on brain death, G.S. 90-322, has no application to this case. The procedures in G.S. 90-322(a) and (b) and the exculpatory clause in G.S. 90-322(d) are not for the protection of criminal assailants. The statute provides a legal procedure for physicians to terminate life support systems where no brain function exists which, if followed, would protect the *physician* from civil or criminal liability. *See* Comment, 14 Wake Forest L. Rev. 771, 784-85 (1978). The law in criminal prosecutions for murder is still that the intervening act must be the sole cause of death. It is sufficient that the defendant's act in shooting the deceased was a contributing factor which in combination with the subsequent acts of the doctor in treatment proximately caused the death. Even if the doctor was negligent, the defendant will not escape liability. *State v. Jones,* 290 N.C. 292, 225 S.E. 2d 549 (1976). The trial judge's instruction greatly exceeded this position of our Courts to the defendant's benefit.

[2]   The argument that the trial judge erred in his instruction on voluntary manslaughter in not properly instructing on proximate cause is not supported by the charge. The trial judge did properly instruct the jury. He properly defined voluntary manslaughter as the unlawful killing of a human being without malice. *See State v. Rummage*, 280 N.C. 51, 185 S.E. 2d 221 (1971). Immediately preceding the discussions of the voluntary manslaughter charge, the trial judge discussed extensively the issue of proximate cause as related to this case. At the opening of his charge on voluntary manslaughter, he said, "*if* you do not find the defendant not guilty on account of what I have just given you in reference to the life support system . . . you would determine whether or not he is guilty of voluntary manslaughter. . . ." (Emphasis added.) In doing this, he properly put the causation issue before the jury. Before reaching voluntary manslaughter, the jury would have to resolve the issue of proximate cause involved in the determination of brain death and termination of the life support systems. Later in the charge, the trial judge explicitly made reference to proximate cause as an issue to be resolved in voluntary manslaughter. The defendant relies on *State v. Ramey*, 273 N.C. 325, 160 S.E. 2d 56 (1968) and *State v. Sherrill*, 28 N.C. App. 311, 220 S.E. 2d 822 (1976). In referring to this line of cases cited by the defendant, the Supreme Court has said

> "We do not, however, understand these cases to create an exception to the general rule that no specific language is required to give a correct instruction, so long as the jury is properly instructed on the law bearing upon each essential element of the offense charged. Unlike the charge before us, in the cases cited above the jury was instructed in language which assumed that the defendant had indeed killed the deceased, thus taking the issues away from the jury's consideration." *State v. Smith*, 294 N.C. 365, 381, 241 S.E. 2d 674, 683 (1978). (Citations omitted.)

Here, as in *State v. Smith*, proximate cause was not removed from the trial judge's instruction on voluntary manslaughter but was instead an express part of it.

[3]   The defendant contends the trial judge erred in sustaining an objection by the State to a question put to him on direct examination by his attorney. The defendant was asked on direct examina-

State v. Holsclaw

tion, "Did you feel that he was going to attack you?" This is a leading question as it suggests the desired answer from a friendly witness on direct examination and is answerable by yes or no. The trial judge properly sustained objection to it and did not abuse his discretion. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974).

[4]  The first officer to arrive on the scene was told that the man who did the shooting was in the defendant's apartment. The officer identified himself and entered with gun drawn and was met by the defendant who said, "Don't shoot. I am the person who called the ambulance." The officer then asked, "Where is the gun?" The defendant pointed to the couch. A rifle was in plain view on the seat of the couch. The defendant's argument that these statements and the rifle were inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966) has no merit. The defendant was not yet under arrest. This was not a custodial interrogation but an on-the-scene investigation of an emergency situation. The question was proper under the circumstances. *State v. Archible*, 25 N.C. App. 95, 212 S.E. 2d 44 (1975); *State v. Thomas*, 22 N.C. App. 206, 206 S.E. 2d 390, *appeal dismissed*, 285 N.C. 763, 209 S.E. 2d 287 (1974). The rifle, in plain view, was observed by an officer lawfully present following a general investigatory question. It was properly admitted. Either *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022 (1971) or *Warden v. Hayden*, 387 U.S. 294, 18 L.Ed. 2d 782, 87 S.Ct. 1642 (1967) would permit the police officer's actions in this case.

[5]  The defendant assigns an additional error under *Miranda* rules in the use of his post custody silence at trial. In *Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240 (1976), the United States Supreme Court held the use for impeachment purposes of a defendant's silence after receiving *Miranda* warnings violated the Due Process Clause of the Fourteenth Amendment. In the case before us, the State on direct examination of the investigating officer and cross-examination of the defendant brought into evidence the fact that the defendant through counsel refused to make any statement on 17 November 1977. Twice on direct examination, the officer related this fact without objection. Later on cross-examination of the defendant, objection was raised. Thus, the evidence to which the defendant now assigns error had

already been placed before the jury, without objection. The benefit of the objection was lost. It will not furnish the basis for a new trial. *State v. Herndon,* 292 N.C. 424, 233 S.E. 2d 557 (1977).

In any event, both instances where defendant now attempts to show error concern questions propounded by the District Attorney just before he asked questions relating to the statement made by defendant on 21 November 1977, while his attorney was present. The questions were properly allowed to make it clear that it was the 21 November 1977 statement about which the District Attorney was making inquiry. This was necessary because of the number of statements in the case. On 17 November, defendant gave responses to an officer's general investigatory questions which were admitted into evidence. Defendant also made a statement after he was in custody that day which was suppressed by the trial judge. Still later on 17 November, defendant with his attorney present, refused to make a statement. Then, on 21 November, defendant did make a statement. No exculpatory statement at trial was impeached or contradicted by earlier post-*Miranda* warning silence as in *Doyle v. Ohio, supra.* It was not even used to impeach the 21 November statement of the defendant. It served merely to explain the chronology of the investigation.

No error.

Judges HEDRICK and ARNOLD concur.