STATE OF NORTH CAROLINA v. BARRY DEWAYNE REAVES

No. COA98-604

(Filed 6 April 1999)

**1. Evidence— pistols marked as exhibits but not admitted— no abuse of discretion**

There was no abuse of discretion in a prosecution resulting in a conviction for conspiracy to commit murder in allowing the State to mark as exhibits but not admit into evidence certain firearms which the State conceded were not the weapons used to commit the offense but which were used to illustrate testimony. Assuming that exhibiting the guns to the jury amounted to an admission into evidence, the evidence was relevant, the State made clear that the pistols shown to witnesses were not the ones used during the crime, and the court made specific findings that the probative value outweighed any danger of unfair prejudice.

**2. Appeal and Error— evidence not included in record—trial court presumed correct**

There was no error in a prosecution resulting in a conviction for conspiracy to murder where the defendant was ordered to produce to the State his investigator's report. The report was not included in the record on appeal and there was evidence from the transcript that the court reviewed the report, weighed its contents, and considered the applicable evidentiary rule. The correctness of the trial court's decision is presumed.

**3. Evidence— prior crime or act—excluded—witness's testimony cumulative and minimal**

There was no prejudicial error in a prosecution resulting in a conviction for conspiracy to murder in the exclusion of evidence of criminal charges pending against a State's witness. In light of *State v. Hoffman*, 349 N.C. 167, the relative status of a prosecution witness is no longer significant; however, this witness's testimony was merely cumulative and of minimal importance.

**4. Appeal and Error— preservation of issues—issue raised at trial**

An issue relating to the exclusion of pending criminal charges against a State's witness was adequately preserved where, although the State contended that defendant's assignment of error was not consistent with the argument on appeal, the tran-

script shows that defendant offered the evidence to show bias when the issue first arose.

### 5. Homicide— conspiracy to murder—sufficiency of evidence

The trial court did not err by denying defendant's motions to dismiss charges of conspiracy to murder where there was abundant evidence of a conspiracy, and the nature and manner of the assault, the conduct of the parties, and other relevant circumstances constitute sufficient evidence from which a reasonable mind could infer that defendant harbored a specific intent to kill the victim.

### 6. Trial— motion to set aside verdict as contrary to weight of evidence—contradictions to be resolved by jury

The trial court did not abuse its discretion by denying defendant's motion to set aside a verdict of conspiracy to murder as against the weight of the evidence where the jury returned not guilty verdicts to attempted murder counts. Any contradictions or discrepancies in the evidence are for the jury to resolve.

### 7. Trial— inconsistent verdicts—conspiracy and attempt

A jury did not render inconsistent verdicts by finding defendant guilty of conspiracy to murder and not guilty of attempted murder; a conviction for conspiracy is not affected by the degree of the substantive crime or even by the nonoccurrence of the crime.

Appeal by defendant from judgment entered 9 January 1998 by Judge D. Jack Hooks, Jr. in Brunswick County Superior Court. Heard in the Court of Appeals 15 February 1999.

*Michael F. Easley, Attorney General, by Teresa L. Harris, Assistant Attorney General, for the State.*

*Frink, Foy & Yount, P.A., by Christopher M. Roshong, for defendant-appellant.*

EDMUNDS, Judge.

On 22 March 1997, defendant and Andre Gore (Gore) were being driven around the town of Pineville by Tyrone Hill (Hill). As they rode down a dead-end road, passing the mobile home where Anthony Cox (Cox) lived with his wife and two children, they observed six or seven people gathered on Cox's porch. Defendant and his compan-

STATE v. REAVES

[132 N.C. App. 615 (1999)]

ions traveled to the end of the street and turned around. As they passed Cox's residence going the other way, individuals at the Cox residence opened fire on the vehicle. Gore testified that he was able to identify Cox as one of the shooters. During testimony, Cox admitted participating in the shooting but denied firing directly at the car. Further, Cox testified that one of his guests had taken the first shot. The three occupants exited the vehicle to take cover. When the shooting ceased, they re-entered the vehicle and left the area. After stopping at a gas station, they examined the automobile and found approximately six bullet holes. All three stated that they wanted "to get them back."

The three drove to defendant's home. Defendant went inside and returned carrying a .38 caliber revolver. Once inside the vehicle, he handed Gore a .380 caliber semi-automatic handgun. Hill apparently already had his own 9 millimeter caliber pistol. No words were exchanged. The three returned to the vicinity of Cox's residence, parking approximately one-half mile away, and walked the remaining distance. Upon arrival, they set up a crossfire, with defendant and Gore positioning themselves in a wooded area across from Cox's home, while Hill took up station on the right side of the trailer. All three men then started shooting into Cox's house. The firing went on for about three minutes, and the shooters could hear the impact of bullets on the house and the sound of glass breaking. After firing numerous rounds into Cox's home, they returned to the car and left the area.

Cox, who suspected the possibility of further trouble after his guests fired on Hill's car, had left his house and walked to a friend's. As he was returning, he saw a car approaching and hid in nearby woods. Although hidden from view of the perpetrators, he maintained sight of his trailer. He heard gunshots and heard someone (he did not recognize the voice) say "I hope the m----- f-----'s dead." Police investigators found several bullet holes in the residence. Looking toward the front of the trailer (where Gore and defendant were positioned) and moving from left to right, there were three bullet holes in a window of the master bedroom, a single bullet hole, two bullet holes in the next window and one above that window, a bullet hole in the center of the front door, a bullet hole to the right of the front door, six in the front porch (including four in the porch's wooden foundation), and one under a window on the right-hand side of the trailer. Moving to the right-hand side of the trailer (where Hill was positioned), investigators found three more bullet holes in the side wall of the bedroom.

The investigators also found three .380 caliber shell casings across the street from Cox's residence, and several 9 millimeter caliber shell casings on the right side and in front of the home.

Defendant was indicted on four counts of attempted murder and one count of conspiracy to commit murder. A jury returned a verdict of guilty to the conspiracy charge and not guilty to the four counts of attempted murder, and the judge imposed a sentence of 220 to 273 months in prison. Defendant appeals. We affirm the conviction.

As a preliminary matter, we note that the State has filed a Motion to Add to the Record on Appeal. The Motion is denied.

I.

[1] Defendant first contends that he was improperly prejudiced when the trial court allowed the State to mark as exhibits certain firearms, which the State conceded were not the weapons used to commit the offense. During trial, the State showed a witness two pistols that were similar to the weapons used during the shooting for the purpose of illustrating the distinction between a revolver and a semi-automatic. Although these weapons were marked as exhibits and demonstrated to the jury, they were not admitted into evidence.

Defendant's counsel had argued in his opening statement that the State could present no evidence of shell casings from the revolver allegedly used by defendant. Although shell casings had been recovered from the crime scene, none were from a revolver (the type pistol defendant was alleged to have used). The State used the exhibits to illustrate testimony that a semi-automatic pistol ejects each spent shell casing as it is fired, while the shell casings of a revolver are retained in the weapon's cylinder after firing. Defendant argues that use of such weapons as demonstrative evidence was unduly prejudicial, outweighing any probative value the weapons may have had. The State's initial response is that there can be no error because the weapons were never admitted into evidence. While the State is correct in its argument, we choose to follow the procedure taken by this Court in *State v. McWhorter* and address this assignment of error "[a]ssuming *arguendo* . . . [that] the State's exhibiting the gun to the jury amounted to an admission of the gun into evidence." 34 N.C. App. 462, 465, 238 S.E.2d 639, 641 (1977), *disc. review denied*, 294 N.C. 443, 241 S.E.2d 844 (1978).

As a general rule, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prej-

udice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (1992). The exclusion of evidence under this rule "is within the trial court's sound discretion . . . . Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). After conducting a thorough *voir dire*, the trial judge made specific findings that the probative value outweighed any danger of unfair prejudice and permitted the exhibition of the weapons.

We find no abuse of discretion. This evidence was relevant to the issue of the State's inability to present shell casings from the weapon allegedly used by defendant. Defendant's counsel raised this matter in his opening argument, and, having invited the State's response, cannot now claim he was improperly prejudiced by the State's exhibition of the weapons to the jury. Moreover, when eliciting testimony regarding the weapons, the State made clear that the pistols shown to the witness were not the ones used during the commission of the crime, but were being exhibited solely to demonstrate the difference between a revolver and a semi-automatic. This assignment of error is overruled.

### II.

[2] Defendant next contends that the trial court erred in "order[ing] defendant to produce to the State the defendant's investigator's report." Defendant argues the report "clearly constituted work product . . . [because it contained] the impressions and conclusions of defendant's investigator which were pursued to assist defendant's counsel in forming his opinions, conclusions, legal theories and strategies in preparation for trial." However, defendant failed to include a copy of the private investigator's report in the record on appeal. His subsequent motion to amend the record on appeal to include the report was denied. We are limited in our review of the assignments of error by North Carolina Rule of Appellate Procedure 9(a), which states that "review is solely upon the record on appeal and the verbatim transcript of proceedings . . . ." This Court has held that where certain exhibits presented to the trial court were not included in the record on appeal, those exhibits could not be considered on review to this Court. *See Ronald G. Hinson Electric, Inc. v. Union County Bd. of Educ.*, 125 N.C. App. 373, 481 S.E.2d 326 (1997).

**STATE v. REAVES**

[132 N.C. App. 615 (1999)]

"To raise the issue of the sufficiency of the evidence to support that finding on appeal, defendant must preserve the record for appeal. Where the record is silent we will presume the trial court acted correctly." *State v. Blandford,* 66 N.C. App. 348, 350-51, 311 S.E.2d 338, 340 (1984) (citing *State v. Fennell,* 307 N.C. 258, 297 S.E.2d 393 (1982)). In this case, the record is not completely silent because the transcript of the proceeding indicates that the trial judge read the report before ruling. After defendant objected, the court conducted a *voir dire* hearing on the matter, then held:

> [T]he Court has examined the [report] and indeed it contains references to other matters other than the interview by Mr. Foss of Mr. Anthony Cox, but the Court finds that the vast majority is a paraphrasing of an interview of Mr. Cox and the circumstances surrounding the same.
>
> The Court rules that it is a statement, that[] the State's entitled to see it under 613.

In the absence of the report, and with evidence from the transcript that the court did review the report, weigh its contents, and consider the applicable evidentiary rule, we presume the correctness of the trial court's decision. This assignment of error is overruled.

### III.

**[3]** Defendant next contends that the court erred in excluding evidence of criminal charges pending against State's witness, Anthony Cox, who was the victim of the crime. In an attempt to challenge the credibility of the witness, defense counsel sought to elicit testimony regarding pending unrelated charges against Cox and any leniency Cox might receive for those charges as a result of his testimony against defendant. Defendant argues "that the exclusion of such testimony prejudiced said jurors in their deliberations and verdict." We agree that it was error to exclude the testimony, but find the error harmless.

**[4]** The State initially contends that defendant's assignment of error is not consistent with the argument raised on appeal. We note, however, that the trial transcript shows that when the issue first arose, defendant offered the evidence of the witness' pending charges to show possible bias, and he raises bias before us now. The issue was adequately preserved.

**[3]** We find *State v. Prevatte,* 346 N.C. 162, 484 S.E.2d 377 (1997), and *State v. Hoffman,* 349 N.C. 167, 505 S.E.2d 80 (1998), controlling in this case. In *Prevatte,* the defendant shot the victim within sight of a neighbor. The neighbor, who was the only witness to the shooting and the State's key witness, had pending forgery charges in the same judicial district. When the defendant attempted to cross-examine the neighbor, the State objected. The trial court conducted a *voir dire,* during which both the witness and his attorney testified that no agreement existed regarding the pending charges in exchange for the witness' testimony. As a result, the trial court refused to allow cross-examination about these pending charges and whether the witness had been promised or expected anything in exchange for his testimony. The Supreme Court reversed, holding: "The effect of the handling of the pending forgery and uttering charges on the witness was for the jury to determine. Not letting the jury do so was error." *Prevatte,* 346 N.C. at 164, 484 S.E.2d at 379. Although this holding applies only to prosecution witnesses, *see State v. Graham,* 118 N.C. App. 231, 238, 454 S.E.2d 878, 882 (holding that evidence of pending charges or indictments may not be used to show bias of a *defense* witness), *disc. review denied,* 340 N.C. 262, 456 S.E.2d 834 (1995), any implication that this holding might also be limited to principal or key prosecution witnesses was rejected when our Supreme Court applied the same rule to cross-examination of a corroborating witness. *See Hoffman,* 349 N.C. 167, 505 S.E.2d 80. However, the *Hoffman* Court further held that a violation could be harmless error where "[t]he witness . . . was not a principal witness for the State but was a corroborating witness." *Id.* at 180, 505 S.E.2d at 88.

The State's brief, which was submitted prior to the *Hoffman* holding, argues that Cox was a peripheral witness. In light of *Hoffman,* the relative status of a prosecution witness is no longer significant. However, we do agree that Cox's testimony was merely cumulative and of minimal importance. In the case *sub judice,* the testimonial evidence against defendant consisted of testimony of co-defendant Andre Gore, Cox, and the investigating officer. Gore presented sufficient evidence that the shooting took place and that defendant was a participant. The investigating officer provided evidence of damage done both inside and outside the house by the bullets, which was corroborated by Cox. Although the State's evidence as to the reason defendant and his friends returned to Cox's house will be discussed in more detail below, Gore and the investigating officer's testimony and the logical inference therefrom provided sufficient evidence that the three went back for the purpose of killing Cox. The only area in

which Cox's testimony may arguably have added something new pertained to defendant's intent, in the form of Cox's testimony that he heard an unidentified speaker say: "I hope the m----- f----'s dead." In light of the other evidence of intent to kill, we find this evidence cumulative. Thus, while the trial court did commit error in preventing questions about Cox's pending charges, the error was harmless beyond a reasonable doubt.

IV.

**[5]** Defendant next assigns error to the trial court's denial of his motions to dismiss the charges at the conclusion of the State's evidence and after all evidence had been presented. To withstand defendant's motion to dismiss, the State had to show substantial evidence as to each essential element of the crime. *See State v. Bates*, 309 N.C. 528, 308 S.E.2d 258 (1983). The trial court must then consider all evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *See State v. Lowery*, 318 N.C. 54, 347 S.E.2d 729 (1986).

To establish criminal conspiracy, the State must prove the existence of an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. *See State v. Littlejohn*, 264 N.C. 571, 142 S.E.2d 132 (1965). " 'It is not necessary . . . that the parties should have come together and agreed in express terms to unite for a common object. A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense.' " *State v. Smith*, 237 N.C. 1, 16, 74 S.E.2d 291, 301 (1953) (quoting *State v. Connor*, 179 N.C. 752, 103 S.E. 79 (1920)). A conspiracy may be proven by circumstantial evidence. *See State v. LeDuc*, 306 N.C. 62, 291 S.E.2d 607 (1982), *overruled on other grounds by State v. Childress*, 321 N.C. 226, 362 S.E.2d 263 (1987). There was an abundance of evidence here of a conspiracy. The only question is whether there was sufficient evidence that the purpose of the conspiracy was to kill Cox.

As our Supreme Court has held, "[t]he defendant's intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *State v. James*, 321 N.C. 676, 688, 365 S.E.2d 579, 586 (1988); *see also State v. Lyons*, 102 N.C. App. 174, 182, 401 S.E.2d 776, 781, *cert. denied*, 329 N.C. 791, 408 S.E.2d 527, *and aff'd*, 330 N.C. 298, 412 S.E.2d 308 (1991). In the case at bar, there was sufficient evidence presented as to the purpose of the conspiracy. Gore testified (and

Cox confirmed) that Cox, along with other individuals at his residence, was shooting at the time the car was hit. In an effort to "get back" at Cox, defendant retrieved two handguns from his home, keeping one and providing Gore with the other, and returned to Cox's home. Although no words were uttered, the three were aware of the purpose of returning to Cox's house. Gore testified as follows:

Q. Was anything said about where you were going?

A. I knew where we were going.

Q. How did you know where you were going?

A. Cause we was—we were wanting to get them back.

. . . .

Q. Well, was there any question in your mind about what the gun was for?

A. No.

Q. Was there any question in your mind when you left Mr. Reaves['] house where you were going?

A. No.

Further convincing evidence that the purpose of the conspiracy was to murder Cox may be found in the actions of the defendant and others when they arrived back at Cox's residence. The three individuals split into two groups so that they could shoot into different parts of the home from different angles. Had they intended merely to register their displeasure at having been fired at themselves, one or two admonitory shots into the air would have sufficed. Instead, defendant and his friends unleashed a barrage that hit almost every part of the house. Cox lived in a mobile home, which means both that the defendant and others were shooting into a confined area with little room to hide, and also that the structure itself would provide scant protection for anyone caught inside during the fusillade. Gore was concerned enough that he tried to find out the next day whether anyone had been hurt. We thus conclude that the nature and manner of the assault, the conduct of the parties, and the other relevant circumstances discussed above, when considered in a light most favorable to the State, constitute sufficient evidence from which a reasonable mind could infer that defendant harbored a specific intent to kill Cox. This assignment of error is overruled.

V.

[6] Defendant's final assignment of error is that the trial court erred in denying his motion to set aside the verdict because the verdict was inconsistent and against the greater weight of the evidence. He argues that "[o]ne must conclude from the jury's verdicts of not guilty on all four (4) attempted murder counts, that the defendant did not have the requisite intent to commit murder, therefore, it must follow that the defendant lacked the requisite intent to . . . form the basis of a union of minds . . . to have formed an agreement . . . ." This argument is without merit.

A motion to set aside the verdict is within the sound discretion of the trial court. *See State v. Peterson*, 337 N.C. 384, 446 S.E.2d 43 (1994), *disapproved of on other grounds by State v. Jackson*, 348 N.C. 644, 503 S.E.2d 101 (1998). Thus, the trial court's decision can be overturned only if it is clear from the record that the trial judge abused or failed to exercise his discretion. After a careful review of the evidence in this case, we find no abuse of discretion in the judge's ruling that the verdict was not against the weight of the evidence. While Gore's testimony was not devoid of ambiguity, any contradictions or discrepancies in the evidence are for the jury to resolve. *See State v. McKinney*, 288 N.C. 113, 215 S.E.2d 578 (1975). The jury apparently resolved any contradictions in Gore's testimony against defendant.

[7] As to defendant's contention that the verdicts are inconsistent, conspiracy occurs when the agreement is made, and a conviction for conspiracy is not affected by the degree of the substantive crime, or even by the nonoccurrence of the crime. *See State v. Guthrie*, 265 N.C. 659, 144 S.E.2d 891 (1965). The evidence here showed, and a jury found, that defendant conspired with Gore and Hill to commit murder. Defendant's acquittal on four counts of attempted murder has no bearing on the fact that the conspiracy existed or on his conviction for that conspiracy. The conspiracy conviction was based on defendant's illegal agreement with Gore and Hill to kill Cox. Therefore, the jury did not render inconsistent verdicts.

No error.

Chief Judge EAGLES and Judge WYNN concur.