STATE OF NORTH CAROLINA v. THEONDRAY OZELL WELCH, Defendant

No. COA98-1388

(Filed 2 November 1999)

**1. Homicide— proximate cause—victim's refusal to accept blood transfusion—not intervening cause of death**

The trial court did not err in denying defendant's motion to dismiss the murder charge based on the theory that the victim's refusal to accept a blood transfusion was an independent and intervening cause of death cutting off defendant's responsibility for the victim's stabbing death because: (1) but for defendant's act of stabbing the victim, she would not have been in need of a blood transfusion; and (2) the doctor could not state with certainty whether the victim would have survived had she received a blood transfusion.

**2. Homicide— second-degree murder—sufficiency of evidence**

The trial court did not err in denying defendant's motion to set aside the jury's verdict of second-degree murder based on the victim refusing a blood transfusion after defendant repeatedly

stabbed her because substantial evidence existed to support the jury's verdict.

Appeal by defendant from judgment entered 2 April 1998 by Judge Wiley F. Bowen in Lee County Superior Court. Heard in the Court of Appeals 20 September 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General H. Dean Bowman, for the State.*

*George H. Whitaker for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Theondray Ozell Welch was indicted on 3 February 1997 for first-degree murder in the stabbing death of Marina Lemmons. At trial, the State's evidence tended to show that defendant and 19-year-old Marina Lemmons were living together at 543 Ryan Avenue in Sanford, North Carolina. At approximately 6:34 p.m. on the evening of 17 December 1996, defendant and Lemmons arrived at the emergency room of Central Carolina Hospital, whereupon Lemmons was admitted with stab wounds to her midsection, forearms, and hands.

Dr. Edward Stanton, a general surgeon, was called to the emergency room to treat Lemmons' injuries. Upon his examination of Lemmons, Dr. Stanton determined that, in addition to a number of non-life-threatening injuries, Lemmons had sustained a ten centimeter laceration of the lateral left chest wall beneath the ninth rib. Due to decreased breath sounds, Dr. Stanton believed that the stab wound had encroached Lemmons' chest and that it had caused abdominal injury. Lemmons had low blood pressure and a high heart rate, both of which indicated significant blood loss. Dr. Stanton estimated that at the time of his examination, Lemmons had already lost roughly four liters of blood—80 to 85% of her total blood volume. Dr. Stanton questioned Lemmons about the source of her injuries, and after some reservation, she confided that defendant had stabbed her.

Prior to surgery, Dr. Stanton discussed the nature and extent of the injuries with Lemmons and informed her that without a blood transfusion or the re-transfusion of her own blood, she would not likely survive. Nevertheless, Lemmons refused, citing her religious convictions as a Jehovah's Witness as the basis for her refusal. Dr. Stanton testified that when she elected to decline the transfusion,

Lemmons was alert and oriented. Subsequently, when Lemmons was under the effects of the anaesthesia, the hospital staff sought permission from her mother or brother to give Lemmons a transfusion of blood. They too refused, based on their religious beliefs.

Lemmons was stable following the surgery, but she later died, after developing complications with a slow heart rate and low oxygen saturation due to inadequate red blood cells needed to transport oxygen to her vital organs. Dr. Stanton was of the opinion that these complications would have been prevented had Lemmons received a blood transfusion earlier. He stated, however, that he could not be certain that she would have survived had she been given the transfusion.

Officer Ryan Weeks of the Sanford Police Department conducted an investigation into the stabbing. When he initially questioned defendant about the stabbing, defendant claimed that an unidentified perpetrator had entered the couple's apartment and attacked Lemmons. After examining the scene of the stabbing and observing defendant's blood-soaked clothing, however, Officer Ryan determined that defendant's version of the events did not ring true and placed defendant under arrest for the assault. Later, during an interview with Detective D.M. Smith, defendant gave the following statement:

I have been living with Marina Lemmons for about nine months. We have been having problems off and on. Tonight I arrived home around 5:00 p.m. . . . Marina was in bed. I left and went up the street and smoked a cigarette. I returned and Marina was in the bath tub. I went into the bathroom and washed my ring finger on my left hand that I cut earlier. Marina was telling me she did not have time for any fake nigger. She was telling me this over and over. I went downstairs in the living room. Marina later came down and started talking on the phone. Marina was talking with some guy in front of me and this made me mad. After talking on the phone, she went back upstairs. After a few minutes I followed. I asked her how come you call other guys and go see other guys after we just broke up. Marina started laughing and saying something smart. I went downstairs and then went back upstairs. I don't remember where I got the knife. I stabbed Marina one time as far as I know. Marina was in the front bedroom facing the road. After I stabbed Marina, she started calling my name. I helped Marina up and helped her with her coat and shoes and helped her downstairs and helped her in the car, a blue Ford, and drove to

the hospital. I don't remember where the knife is, but it must be in the apartment. Its a knife that I carry for protection. The knife is a kitchen knife about 6 inches long.

At the close of the State's evidence, defendant moved to dismiss the charge of first-degree murder based on the insufficiency of the evidence. Following oral arguments, the trial judge denied the motion. The defense presented no evidence.

During the charge conference, defendant requested a special instruction on the doctrines of intervening agency and insulating acts as they relate to the element of proximate cause. The court denied the request, but after closing arguments, the court reversed its earlier ruling and gave the requested instruction. The jury convicted defendant of second-degree murder, and the court sentenced him to a term of 251 months imprisonment. Defendant appeals.

[1] Defendant first argues that the trial judge erred by denying his motion to dismiss the murder charge at the end of the State's evidence and, again, at the close of all the evidence. It is defendant's contention that the State's evidence was insufficient as a matter of law to establish the proximate cause element of second-degree murder. We must disagree.

"When ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State; and the State is entitled to every reasonable inference to be drawn therefrom." *State v. Fleming,* 350 N.C. 109, 142, 512 S.E.2d 720, 742 (1999). The question for the court is whether the State has presented substantial evidence of each element of the offense charged. *State v. Lee,* 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). Thus, "[i]f there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear,* 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

"Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Robbins,* 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). " 'Proximate cause is an element of second degree murder[.]' " *State v. Holsclaw,* 42 N.C. App. 696, 699, 257 S.E.2d 650, 652 (1979) (quoting *State v. Sherrill,* 28 N.C. App. 311, 313, 220 S.E.2d 822, 824 (1976)). A defend-

ant will be held criminally responsible for second-degree murder if his act caused or directly contributed to the victim's death. *State v. Jordan*, 333 N.C. 431, 439, 426 S.E.2d 692, 697 (1993). To escape responsibility based on an intervening cause, the defendant must show that the intervening act was "the sole cause of death." *Holsclaw*, 42 N.C. App. at 699, 257 S.E.2d at 652.

Defendant contends, based on the testimony of Dr. Stanton, that Lemmons' refusal to accept a blood transfusion was an independent and intervening cause of death, such as to cut off any responsibility defendant may have in the victim's death. However, it is clear from the evidence that Lemmons' act in declining a blood transfusion was not "the sole cause of death." *Id.* Indeed, all of Lemmons' injuries resulted from the stabbing inflicted by defendant. Thus, but for defendant's act, Lemmons would not have been in need of a blood transfusion. Furthermore, Dr. Stanton could not state with certainty whether Lemmons would have survived had she received a blood transfusion. Therefore, we hold that the State presented sufficient evidence of proximate cause to submit the charge of second-degree murder to the jury, and the trial court did not err in denying defendant's motion to dismiss.

**[2]** Defendant further argues that the court erred in denying his motion to set aside the jury's verdict, because the evidence was insufficient to support his conviction of second-degree murder. Again, we disagree.

Whether to set aside a jury's verdict based on insufficient evidence is a matter within the sound discretion of the trial court. *State v. Reaves*, 132 N.C. App. 615, 513 S.E.2d 562 (1999). Accordingly, this Court will not disturb the trial judge's ruling on a motion to set aside the verdict, unless "it is clear from the record that the trial judge abused or failed to exercise his discretion." *Id.* at 624, 513 S.E.2d at 568. As previously discussed, substantial evidence existed to support the jury's verdict finding defendant guilty of second-degree murder. Therefore, this argument fails.

We have examined defendant's remaining argument and determine it to be wholly without merit. For the foregoing reasons, we hold that defendant was afforded a fair trial, free of prejudicial error.

NO ERROR.

Chief Judge EAGLES and Judge MARTIN concur.