STATE OF NORTH CAROLINA v. GERRICK LAMONT BETHEA

No. COA03-1108

(Filed 7 December 2004)

**1. Homicide— second-degree murder—officer's death during high speed chase—malice**

The trial court correctly denied defendant's motion to dismiss a second-degree murder charge for insufficient evidence of malice in the death of an officer in an automobile accident while he was chasing defendant at high speed. While prior second-degree murders from automobile accidents have involved impaired driving, defendant's conduct here was equally reckless and wanton.

**2. Homicide— second-degree murder—officer's death in high speed chase—proximate cause**

There was sufficient evidence of proximate cause in a second-degree murder case arising from the death of an officer in an automobile accident while he was chasing defendant at high speed. A reasonable mind might conclude that defendant's reckless flight and wanton violation of the traffic laws caused or directly contributed to the victim's death.

**3. Homicide— second-degree murder—death of officer in car chase—requested instructions—insulating negligence**

The court gave in substance all but one of the instructions on proximate cause requested by a second-degree murder defendant prosecuted for the death of an officer who was chasing defendant at high speed. There was no error in not giving an instruction on insulating negligence because contributory negligence has no place in criminal law and no reasonable person could conclude that the officers' actions intervened to be the cause of death.

**4. Evidence— emergency room photographs of deceased— illustrative of testimony—not excessive or repetitive**

The trial court did not err in a second-degree murder prosecution by admitting emergency room photographs of the deceased, a law enforcement officer who died while chasing defendant at high-speed. The photographs were admitted to illustrate another officer's testimony and they were not used excessively or repetitiously to arouse the passions of the jury.

**5. Witnesses— redirect examination—scope of cross-examination not exceeded**

A redirect examination about recorded law enforcement radio transmissions in a second-degree murder prosecution did not exceed the scope of the cross-examination where defendant had used the transcript in extensively cross-examining an officer.

Appeal by defendant from judgment entered 24 February 2003 by Judge Robert F. Floyd in Bladen County Superior Court. Heard in the Court of Appeals 15 June 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for the State.*

*The McGougan Law Firm, by Paul J. Ekster and Kevin J. Bullard, for defendant-appellant.*

CALABRIA, Judge.

Gerrick Lamont Bethea ("defendant") appeals from a conviction of second-degree murder for the death of a law enforcement officer during a high speed pursuit of defendant. We find no error.

At approximately one o'clock a.m. on 26 September 2001, Officer William Howell ("Officer Howell") of the Elizabethtown Police

Department was on patrol and observed a man he suspected was defendant getting into a vehicle and driving out of a convenience store parking lot. Officer Howell knew defendant's license had been revoked. He followed defendant, and after confirming the vehicle's registration had expired, activated his patrol car's blue light to stop defendant. Defendant responded by driving through a red light and increasing his speed to seventy-five miles per hour in a thirty-five mile per hour zone. Officer Howell pursued defendant out of the Elizabethtown city limits into the surrounding rural area.

Approximately two minutes after initiating pursuit, Officer Howell made radio contact with Clarkton Police Chief Joey Blackburn ("Chief Blackburn") and Bladen County Deputy Sheriff Jamie Collins ("Deputy Collins" or the "victim") (collectively the "two officers"), who were patrolling Clarkton in Chief Blackburn's patrol car. Upon learning the pursuit was heading toward Clarkton, the two officers joined the pursuit. Chief Blackburn passed Officer Howell to lead the pursuit, pulled alongside defendant's vehicle, and positively identified him.

After defendant braked heavily and turned sharply onto a road with which Chief Blackburn was unfamiliar, the two officers discussed the possibility that defendant would stop his car and try to run. Chief Blackburn handed Deputy Collins a flashlight and noticed the deputy moving his hand toward his seatbelt latch in preparation to exit the patrol car. Chief Blackburn closed to within a car length of defendant in preparation for defendant abandoning his car. As the two officers and defendant approached a curve, of which Chief Blackburn was not aware, defendant slowed very quickly. In response, Chief Blackburn braked heavily, but the brakes had heated during the pursuit and were not working effectively. Chief Blackburn's driver-side bumper struck the defendant's passenger-side bumper. Chief Blackburn reacted by quickly steering right in an attempt to avoid further colliding with defendant. While defendant missed the curve and went straight into a ditch, Chief Blackburn's car slid sideways and impacted a concrete marker and a tree. On impact, Deputy Collins was thrown from the car and subsequently died of his injuries in the emergency room. An accident reconstruction report stated that the speeds of defendant's car and Chief Blackburn's car were too great to navigate the curve and that Deputy Collins did not have his seatbelt fastened at the moment of impact.

Officer Howell arrested defendant at the scene. During the pursuit, defendant reached speeds of approximately one hundred miles

per hour, sped through a traffic light and several stop signs without slowing, crossed into the oncoming traffic lane several times, and turned his car lights off several times while traveling at speeds between ninety and ninety-five miles per hour, making his car difficult to see. Defendant pled guilty to felony speeding to elude arrest, speeding, driving left of center, driving with an expired registration, driving while license revoked, reckless driving to endanger persons or property, and violation of a traffic control device.

I. *Motion to Dismiss*

**[1]** Defendant asserts the trial court erred by denying his motion to dismiss the charge of second-degree murder because the State failed to produce sufficient evidence of malice and of proximate cause. We disagree.

The issue in a defendant's motion to dismiss for insufficiency of the evidence is whether, taking the evidence in the light most favorable to the State, "there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. . . . Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) (citation omitted). "Second-degree murder is an unlawful killing with malice, but without premeditation and deliberation." *State v. Brewer*, 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991). The elements of second-degree murder are: "1. defendant killed the victim; 2. defendant acted intentionally and with malice; and 3. defendant's act was a proximate cause of the victim's death." *State v. Bostic*, 121 N.C. App. 90, 98, 465 S.E.2d 20, 24 (1995).

Defendant argues that, because he was not driving under the influence, he could not have exhibited the requisite malice for a conviction of second-degree murder. Essentially, defendant argues evidence that a defendant was driving under the influence is the *only* evidence sufficient to prove malice in a second-degree murder case involving an automobile accident. However, our jurisdiction has long held that malice may be inferred " 'when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.' " *State v. McBride*, 109 N.C. App. 64, 67-68, 425 S.E.2d 731, 733 (1993) (quoting *State v. Reynolds*, 307 N.C. 184, 297 S.E.2d 532 (1982)). *Accord State v. Snyder*, 311 N.C. 391, 394, 317 S.E.2d 394, 396 (1984). Moreover, to prove malice in second-

STATE v. BETHEA

[167 N.C. App. 215 (2004)]

degree murder prosecutions involving automobile accidents, "it [is] necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind." *State v. Rich*, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000). Further, "[w]hat constitutes proof of malice will vary depending on the factual circumstances in each case." *McBride*, 109 N.C. App. at 67, 425 S.E.2d at 733.

Defendant correctly points out that every North Carolina appellate decision involving an automobile accident, where the court found sufficient evidence to prove malice for a second-degree murder conviction, involved a defendant driving under the influence of alcohol or some other impairing substance at the time of the accident. While driving under the influence is certainly evidence sufficient to prove malice, defendant's actions in the instant case, motivated by an attempt to elude law enforcement by driving in an extremely dangerous manner, is an equally reckless and wanton act, which evidences " 'a mind utterly without regard for human life and social duty and deliberately bent on mischief.' " *Id.* at 67-68, 425 S.E.2d at 733 (citation omitted). Moreover, our courts have not found driving under the influence to be the only evidence capable of proving malice. *See, e.g., Rich*, 351 N.C. 386, 527 S.E.2d 299; *State v. Byers*, 105 N.C. App. 377, 413 S.E.2d 586 (1992). In *Byers*, this Court analyzed the relevance and admissibility of certain evidence and found that

> the evidence presented at trial tending to show defendant knew his license was revoked and proceeded to drive regardless of this knowledge indicates defendant acted with "a mind regardless of social duty" and with "recklessness of consequences." We further find the evidence tending to show defendant took the car without permission and displayed fictitious tags in order to drive indicates a mind "bent on mischief."

*Byers*, 105 N.C. App. at 382, 413 S.E.2d at 589.

In the instant case, the evidence, taken in the light most favorable to the State, shows that defendant was driving with a revoked license, fled to elude law enforcement officers, sped through a red light and several stop signs, drove at speeds up to one hundred miles per hour, crossed into the oncoming traffic lane several times, and turned his car lights off on dark rural roads, decreasing his own visibility and making his car extremely difficult to see, while traveling at speeds between ninety and ninety-five miles per hour. Defendant's clear mind

unclouded by intoxicating substances that might have hindered his ability to appreciate the danger of his actions, does not negate the presence of malice, but rather, tends to more clearly show an "intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind." *Rich,* 351 N.C. at 395, 527 S.E.2d at 304. Accordingly, we hold the evidence here was sufficient to allow a reasonable jury to infer malice from defendant's reckless and wanton attempt to elude law enforcement. *Cf. State v. Wade,* 161 N.C. App. 686, 690, 589 S.E.2d 379, 383 (2003), *disc. rev. denied,* 358 N.C. 241, 594 S.E.2d 33 (2004) (holding even "in the absence of impairment by alcohol" the "operation of a vehicle could rise to the level of culpable negligence" for the purposes of convictions of involuntary manslaughter and assault with a deadly weapon inflicting serious injury); *State v. Nugent,* 66 N.C. App. 310, 311-13, 311 S.E.2d 376, 377-78 (1984) (upholding an involuntary manslaughter conviction where no evidence of impaired driving was present).

**[2]** Defendant further argues there was insufficient evidence of proximate cause because he did not actually collide with the other vehicle and kill the victim with his impact. Proximate cause is defined

> as a cause: (1) which, in a natural and continuous sequence and unbroken by any new and independent cause, produces an injury; (2) without which the injury would not have occurred; and (3) from which a person of ordinary prudence could have reasonably foreseen that such a result, or some similar injurious result, was probable under the facts as they existed.

*State v. Hall,* 60 N.C. App. 450, 454-55, 299 S.E.2d 680, 683 (1983). Accordingly, "[a] defendant will be held criminally responsible for second-degree murder if his act caused or directly contributed to the victim's death." *State v. Welch,* 135 N.C. App. 499, 502-03, 521 S.E.2d 266, 268 (1999). The evidence taken in the light most favorable to the State shows that the victim died after Chief Blackburn's patrol car collided with the rear of defendant's car due to defendant's sudden slowing and the patrol car careened out of control striking a concrete barrier then a tree at the end of a high-speed pursuit, which would not have occurred had defendant stopped when Officer Howell activated his blue light. A reasonable mind might conclude that defendant's reckless flight and wanton violation of the State's traffic laws "caused or directly contributed to" the collision between defendant's car and the patrol car, which resulted in the victim's

death. *Id.* Accordingly, we hold the trial court did not err in denying defendant's motion to dismiss.

Based on his above arguments, defendant also asserts the trial court erred in denying his motion to set aside the jury's verdict. "The decision whether to grant or deny a motion to set aside the verdict is vested in the sound discretion of the trial court . . . ." *State v. Wilson,* 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985). "When the evidence at trial is sufficient to support the jury's verdict, there is no abuse of discretion in the trial court's denial of defendant's motion to set aside the verdict." *State v. Serzan,* 119 N.C. App. 557, 562, 459 S.E.2d 297, 301 (1995). As we have already held the evidence at trial was sufficient to support the jury's verdict, we hold the trial court did not abuse its discretion in denying defendant's motion to set aside the verdict.

II. Jury Instruction

**[3]** Defendant asserts the trial court erred by refusing to give four requested instructions on proximate cause: N.C.P.I.—Civ. 102.19 (gen. civ. vol. 2004) (multiple causes); N.C.P.I.—Civ. 102.27 (gen. civ. vol. 2004) (concurring acts of negligence); N.C.P.I.—Civ. 102.60 (gen. civ. vol. 2004) (concurring negligence); and N.C.P.I.—Civ. 102.28 (gen. civ. vol. 2004) (insulating acts of negligence). We disagree.

"It is well established that when a defendant requests a special instruction which is correct in law and supported by the evidence, the trial court must give the requested instruction, at least in substance." *State v. Tidwell,* 112 N.C. App. 770, 773, 436 S.E.2d 922, 924 (1993). "If a requested instruction is refused, defendant on appeal must show the proposed instruction was 'not given in substance, and that substantial evidence supported the omitted instruction.'" *State v. Thompson,* 118 N.C. App. 33, 36, 454 S.E.2d 271, 273 (1995) (quoting *State v. White,* 77 N.C. App. 45, 52, 334 S.E.2d 786, 792 (1985)).

Under the proximate cause element, the trial court instructed the jury that:

> A proximate cause is a real cause, without which the victim's death would not have occurred. The defendant's acts need not have been the last or nearest cause. It is sufficient if they concurred with some other cause, acting at the same time, which in combination with it proximately caused the victim's death.

The trial court's instruction gave in substance N.C.P.I.—Civ. 102.19 (multiple causes); N.C.P.I.—Civ. 102.27 (concurring acts of negli-

gence); and N.C.P.I.—Civ. 102.60 (concurring negligence), which each instruct that a jury may consider a defendant's actions to be a proximate cause even though there may have been other proximate causes. The trial court did not, however, give in substance N.C.P.I.—Civ. 102.28 (insulating acts of negligence). We must therefore review the record to determine whether substantial evidence supported an instruction under N.C.P.I.—Civ. 102.28. *Thompson*, 118 N.C. App. at 36, 454 S.E.2d at 273.

Defendant argues certain actions by the officers constituted one or more intervening or superseding causes that broke the causal chain of defendant's negligent actions. "To escape responsibility based on an intervening [or superseding] cause, the defendant must show that the intervening [or superseding] act was 'the sole cause of death.' " *Welch*, 135 N.C. App. at 503, 521 S.E.2d at 268 (quoting *State v. Holsclaw*, 42 N.C. App. 696, 699, 257 S.E.2d 650, 652 (1979)). An intervening or superseding cause is a cause that " 'so entirely [intervenes in or] supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury.' " *Cox v. Gallamore*, 267 N.C. 537, 544, 148 S.E.2d 616, 621 (1966) (quoting *Henderson v. Powell*, 221 N.C. 239, 19 S.E.2d 876 (1942)).

Defendant contends several actions and decisions by the officers were intervening or superseding causes. First, Officer Howell and the two officers pursued him outside their respective jurisdictions and despite the safer option of arresting him the next day at his residence. Second, they pursued him at unsafe speeds on unfamiliar roads even after the brakes of Chief Blackburn's patrol car showed signs of wear due to the pursuit. Third, Chief Blackburn steered right in an attempt to avoid further colliding with defendant. Fourth, evidence at trial tended to show that the victim was not wearing his seat belt at the time of the accident.

Our Supreme Court has long held that "[c]ontributory negligence as such has no place in the law of crimes." *State v. Foust*, 258 N.C. 453, 459, 128 S.E.2d 889, 894 (1963). Therefore, the probability that a reasonable person might conclude that the two officers' decisions and actions contributed to the victim's death is of no moment. Moreover, no reasonable person could conclude that the two officers' decisions and actions, viewed separately or together, so entirely intervened in or superseded the operation of defendant's reckless flight and wanton traffic violations as to constitute the sole cause of the victim's death. Accordingly, the evidence was not sufficient to

STATE v. BETHEA

[167 N.C. App. 215 (2004)]

support an instruction on insulating acts of negligence, and the trial court did not err by declining to give the instruction.

III. Introduction of Photographs to the Jury

[4] Defendant asserts the trial court erred by allowing the introduction of two color photographs from different angles of the deceased victim in the emergency room. Specifically, defendant argues that, because the defendant did not dispute that the victim died as a result of the car accident, the pictures were not probative of any issue in dispute. He also argues the pictures were gruesome and were introduced solely to arouse the juror's passions. We disagree.

Our Supreme Court has long "held that a stipulation as to the cause of death does not preclude the State from proving all essential elements of its case." *State v. Elkerson*, 304 N.C. 658, 665, 285 S.E.2d 784, 789 (1982). Under N.C. Gen. Stat. § 8C-1, Rule 401 and Rule 402, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" is admissible. " 'Photographs are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words.' " *State v. Watson*, 310 N.C. 384, 397, 312 S.E.2d 448, 457 (1984) (quoting *State v. Cutshall*, 278 N.C. 334, 347, 180 S.E.2d 745, 753 (1971)). Moreover, "[p]hotographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988).

The two photographs were introduced during Chief Blackburn's testimony to provide a chain of causation between the accident and the victim's death and to illustrate Blackburn's observations of the state of the victim's body. Thus, the two photographs, although somewhat graphic, were not introduced in an excessive or repetitious manner in order to arouse the passions of the jury but, rather, were introduced to allow the State to prove chain of causation, an essential element of its case, and to illustrate Blackburn's testimony. Accordingly, the trial court did not err in admitting the two photographs.

Defendant also asserts that any probative value of the two photographs was substantially outweighed by their prejudicial effect. "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." N.C. Gen. Stat.

§ 8C-1, Rule 403. Whether to exclude relevant evidence under Rule 403 is a determination left to " 'the sound discretion of the trial court, and the trial court's ruling should not be overturned on appeal unless the ruling was 'manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Hyde*, 352 N.C. 37, 55, 530 S.E.2d 281, 293 (2000) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)). Having determined above that the two photographs were probative, admissible, and not used excessively or repetitiously to arouse the passions of the jury, we conclude the trial court did not abuse its discretion in finding that the two photographs' probative value outweighed the danger of unfair prejudice.

IV. Redirect Examination

**[5]** Defendant asserts the trial court abused its discretion by allowing the State on redirect examination to question a witness concerning matters not covered in cross-examination. "The purpose of redirect examination is to clarify any questions raised on cross-examination concerning the subject matter of direct examination and to confront any new matters which arose during cross-examination." *State v. Baymon*, 336 N.C. 748, 754, 446 S.E.2d 1, 4 (1994). Defendant directs our attention to the redirect examination concerning portions of the recorded law enforcement radio transmissions occurring while Chief Blackburn and the victim were driving to join the pursuit and argues this line of questioning was outside the scope of the cross-examination. However, defense counsel cross-examined Blackburn extensively on this period of time using a transcript of the radio transmissions, which "opened the door" to a redirect on these matters. Accordingly, the redirect examination was not outside the scope of the cross-examination, and the defendant's assertion is without merit.

Defendant also asserts the trial court erred in denying his motion for appropriate relief after the trial. Having determined defendant received a fair trial free from error, we find this assertion to be without merit. Finally, defendant asserts that the trial court abused its discretion under N.C. Gen. Stat. § 8C-1, Rule 403, by admitting certain statements into evidence. Defendant however sets forth no argument in support of this assertion. Therefore, pursuant to N.C. R. App. P. 28(b)(6), we decline to address it.

No error.

Judges WYNN and LEVINSON concur.