STATE OF NORTH CAROLINA, PLAINTIFF v. MICHAEL ROBERT HYMAN, DEFENDANT

No. COA01-1397

(Filed 15 October 2002)

**1. Evidence— urine test—chain of custody**

The trial court did not err in a delivery of cocaine to a minor child thirteen years or younger, second-degree kidnapping, and assault on a child under the age of twelve years case by allowing into evidence the results of the test of the minor child's urine, because: (1) concerns about the chain of custody of the material or the procedures used to test it go to the weight that should be accorded the test results, and the defense had ample opportunity to present these concerns to the jury; and (2) although defendant contends a witness nurse allegedly offered an improper expert opinion about the test results, the witness rendered no expert opinion and the test results had already been received into evidence.

**2. Evidence— drug paraphernalia—illustrative purposes**

The trial court did not err in a delivery of cocaine to a minor child thirteen years or younger, second-degree kidnapping, and assault on a child under the age of twelve years case by allowing an investigator to illustrate his testimony concerning crack

STATE v. HYMAN

[153 N.C. App. 396 (2002)]

cocaine usage by using cocaine, marijuana, and sundry items of drug paraphernalia that were neither found in defendant's residence nor otherwise connected to the events alleged to have occurred on 19 June 2000, because: (1) the items were admitted for illustrative purposes only and no attempt was made to link defendant with the items; and (2) the trial court repeatedly gave limiting instructions emphasizing to the jury that the exhibits were not seized from defendant, were not linked to him, and were to be considered only for the purpose of illustrating and explaining the investigator's testimony.

3. **Jury— motion to replace juror—spoke to officer about trial outside courtroom**

The trial court did not abuse its discretion in a delivery of cocaine to a minor child thirteen years or younger, second-degree kidnapping, and assault on a child under the age of twelve years case by denying defendant's motion to remove and replace a juror after the juror reported that a law enforcement officer had spoken to her about the trial outside the courtroom, because: (1) the trial court conducted an inquiry of the juror which established that the person who had made the comment to her had no connection to the case or the trial; and (2) the juror stated unequivocally that nothing about the incident would affect her consideration in any way, that she would exclude the incident from her consideration, and that she would decide the case based solely on the evidence presented in the courtroom and law as explained by the court.

Appeal by defendant from judgments entered 8 May 2001 by Judge W. Osmond Smith, III, in Alamance County Superior Court. Heard in the Court of Appeals 22 August 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Edwin L. Gavin, II, for the State.*

*Mary March Exum for defendant-appellant.*

MARTIN, Judge.

Defendant appeals from judgments entered upon his convictions of delivery of cocaine to a minor child 13 years old or younger, second degree kidnapping, and assault on a child under the age of 12 years.

**STATE v. HYMAN**

[153 N.C. App. 396 (2002)]

The State's evidence tended to show that C.J., an eight-year-old girl, and her family were neighbors with defendant in a mobile home park. Prior to the alleged incident, there had been friendly interactions between C.J.'s family members and defendant, including C.J., her sisters, and/or her mother going to defendant's home to watch television or use the telephone. On 19 June 2000, her sister's birthday, C.J. was playing outside and saw defendant, who asked her to come to his trailer because he had a birthday present for her sister. Once inside the trailer, C.J. testified that defendant turned the television up loud, took her into the bedroom, and put a weight bench and weights against the door. He then reached under the bed and pulled out what C.J. described as a plastic tube that had "black stuff at the bottom and it was bubbling." He held a lighter to the far end of the tube and inhaled from the other end, then held the tube to C.J.'s mouth and had her inhale twice before he inhaled from it again. C.J. testified that her stomach hurt and her throat burned after the inhalations.

Meanwhile, C.J.'s mother had become concerned about her daughter's whereabouts and learned from a neighbor that C.J. had gone with defendant to his residence. She went to defendant's door, knocked very loudly, and called their names. C.J. stated that when her mother was at the door, the defendant held his hand over her mouth, asking her to be quiet. C.J. testified that after her mother left, defendant put her in the bedroom closet and held the door closed. One of C.J.'s sisters then came to the door of the trailer and knocked. Defendant let C.J. out of the closet and the bedroom, gave her a hug, asked her "not to tell anyone," and gave her fifty cents.

C.J. went to a neighbor's residence where her mother was, began to cry, and told her mother what had happened. The police and EMS were called and C.J. was later taken to the hospital for testing for drug exposure. Results of a test of her urine revealed that C.J. had cocaine metabolites in her system.

A search of defendant's residence by law enforcement officers on the following day, 20 June 2000, turned up rolling paper, a spoon and a plastic bag corner that both tested positive for cocaine residue, two pointed metal rods, a metal wire sponge, and other plastic bags or bag corners. The officers found neither a plastic tube such as that described by C.J., nor crack cocaine.

Robert Wilborn, a narcotics investigator for the Alamance County Sheriff's Department, was permitted to testify as an expert witness "in the field of identification of cocaine related paraphernalia and

illegal cocaine use and practices." Over defendant's objection, and after giving a limiting instruction to the jury, the trial court allowed Mr. Wilborn to use two plastic bag corners, each containing a piece of crack cocaine, a plastic bag of marijuana, and two glass tubes containing screens, which he identified as homemade pipes used to smoke crack cocaine, to illustrate his testimony concerning crack cocaine use. None of the items had been found in defendant's residence nor did the State contend the items were connected to defendant in any way. The witness explained how crack cocaine is made by cooking powder cocaine and baking powder together, and how it is packaged for sale by being pushed into the corner of a plastic bag that is then tied off and cut above the knot. He also explained how crack pipes are made and used. Mr. Wilborn testified that the plastic bags and bag corners found in defendant's home were similar to those used to package crack cocaine. He also testified that crack cocaine can be broken into small pieces, rolled with marijuana in rolling paper, and smoked, and that this substance was called "Bufi" on the street. With respect to the two metal rods and metal sponge taken from defendant's trailer, the officer testified that the sponge appeared to have a bit cut off of it. He also described the metal rods as being about 4 inches in length. He testified that "push rods" are used in the construction of a crack pipe to push a screen into a tube to hold the crack cocaine at one end. Finally, he testified that C.J.'s testimony about the alleged incident was consistent with the use of crack cocaine.

Defendant offered the testimony of his landlady, who stated that the previous tenants to whom she had rented the mobile home had not cleaned after they had vacated it and that she had not had time to clean it thoroughly before defendant moved in. She also testified that she had never smelled the odor of marijuana or cocaine in the mobile home after defendant moved in and had never known him to be involved with drugs. There was evidence that C.J. did not have any "funny odor" on her breath when she went to the neighbor's house and told her mother about the alleged incident.

Defendant also offered the testimony of an expert witness in the field of toxicology who testified that proper procedures which should be used in forensic testing required that a confirmatory test should have been conducted after the screening test revealed a positive result for the presence of cocaine metabolites in C.J.'s urine. There was also evidence that some substances, such as analgesics, can cause false positives.

STATE v. HYMAN

[153 N.C. App. 396 (2002)]

Defendant brings forward three assignments of error in which he alleges the trial court erred by (1) admitting into evidence the results of an analysis of C.J.'s urine, (2) admitting into evidence, for illustrative purposes, items that were wholly unconnected to the defendant, and (3) denying his motion to remove and replace a juror to whom a deputy sheriff had made a comment about the case. His remaining assignments of error have been abandoned. N.C.R. App. P. 28(b)(6). We have carefully considered his arguments and find no prejudicial error in his trial.

I.

[1] Defendant first asserts that it was error for the trial court to allow into evidence the results of the test of C.J.'s urine because (a) there was no evidence confirming that the urine tested was C.J.'s, (b) the results are not "inherently reliable" due to the lack of a formal chain of custody, and (c) the test was done for medical purposes and thus lacked the confirmatory procedures normally required for forensic evidence. Defendant moved *in limine* for the exclusion of the results and objected to their admission at trial. After a *voir dire* hearing on the issue, the motion was denied. Defendant's objections at trial were overruled.

Defendant challenges the State's use of the urine test results as "hearsay" because no witness saw C.J. give the urine sample. Thus, defendant asserts that even before any flaws in the chain of custody occurred, there was no valid sample that could be connected with the victim. Defendant also attacks various differences between the procedure used by the hospital in this case and the procedures it would normally use for forensic testing, including the handling of the sample and how it was tested.

In general, a trial judge has the discretion to decide whether enough evidence has been introduced to show that the item offered is the same as the one involved in the case. *See State v. Sloan*, 316 N.C. 714, 343 S.E.2d 527 (1986). Although a defendant may point to gaps or flaws in the chain of custody or procedure, a showing that the evidence was tampered with or altered is generally required for a reversal of the trial court's decision to admit the evidence. *See id.* Rather, concerns about the chain of custody of the material or the procedures used to test it go to the weight that should be accorded to the test results. *See id.; State v. Miller*, 80 N.C. App. 425, 342 S.E.2d 553 (1986). The defense had ample opportunity to present those concerns to the jury in this case and did so at length.

Defendant also argues the trial court erred in permitting the nurse who attended C.J. during her visit to the emergency room to testify from the medical records that C.J.'s urine tested "positive" for cocaine. Asserting that the nurse should not have been allowed to testify as to the test results, defendant cites cases in which new trials were granted because medical experts improperly testified as to results of tests, thus presenting the results as substantive evidence rather than as a basis for expert opinion. *See, e.g., State v. Wade,* 296 N.C. 454, 251 S.E.2d 407 (1979); *State v. Edwards,* 63 N.C. App. 737, 306 S.E.2d 160, *disc. review denied,* 309 N.C. 633, 308 S.E.2d 717 (1983). Those cases, however, are inapposite here; the witness rendered no expert opinion and the test results had already been received into evidence. Moreover, defendant's expert, who testified primarily about forensic and medical testing procedures, gave testimony, without objection, as to the positive results of the test and the attending doctor's diagnosis of "cocaine abuse." An objection to the admission of evidence is waived where the same or similar evidence is subsequently admitted without objection. *State v. Jolly,* 332 N.C. 351, 420 S.E.2d 661 (1992). Defendant's assignments of error relating to the admission of the results of the test of C.J.'s urine are overruled.

## II.

**[2]** Defendant next asserts that it was prejudicial error for the Court to allow Investigator Wilborn to illustrate his testimony concerning crack cocaine usage by using cocaine, marijuana, and sundry items of drug paraphernalia that were neither found in defendant's residence nor otherwise connected to the events alleged to have occurred on 19 June 2000. Defendant asserts the evidence was irrelevant and unfairly prejudicial.

The relevance of evidence is judged in terms of its tendency to make the existence of any fact at issue more or less probable. N.C. Gen. Stat. § 8C-1, Rule 401 (2002). Even where evidence is determined to be relevant, the trial court must balance its probative value against the likelihood of unfair prejudice due to confusion or the inflammatory nature of the evidence. N.C. Gen. Stat. § 8C-1, Rule 403 (2002). While clearly reviewable on appeal, a trial court's ruling on relevance is generally given much deference. *See State v. Godley,* 140 N.C. App. 15, 25, 535 S.E.2d 566, 574 (2000); *disc. review denied,* 353 N.C. 387, 547 S.E.2d 25, *cert. denied,* 532 U.S. 964, 149 L. Ed. 2d 384 (2001). A trial judge's decision under Rule 403 regarding the relative balance of probative weight and potential for prejudice will only be

overturned for an abuse of discretion. *See State v. Wallace,* 351 N.C. 481, 528 S.E.2d 326, *cert. denied,* 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). Even where evidence is erroneously admitted because it is irrelevant or prejudicial, the defendant has the burden of showing that the error was not harmless, that "there [was] a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C. Gen. Stat. § 15A-1443(a) (2002).

Defendant cites *State v. Moctezuma,* 141 N.C. App. 90, 539 S.E.2d 52 (2000), in support of his argument that the admission of evidence which is not connected to a defendant is both irrelevant and prejudicial. In *Moctezuma,* the defendant was convicted of trafficking in cocaine after police interrupted an alleged drug transaction in a parking lot and found a quantity of cocaine in a van driven by defendant. Defendant claimed not to have had knowledge the cocaine was in the van. The State was permitted to introduce evidence of a large quantity of drugs and drug paraphernalia found in a residence which defendant shared with several other men. Defendant, however, was not charged with possession of the drugs and paraphernalia found at the residence and there was no evidence to connect those substances with defendant. The trial court instructed the jury it could consider the evidence of the drugs and paraphernalia found at the residence on the issue of defendant's knowledge of the cocaine found in the van he was driving at the time of his arrest. *Id.* at 95, 539 S.E.2d at 56. This Court held that, despite the trial court's limiting instruction, the evidence was improperly admitted because it was not connected to the defendant and could have led the jury to conclude that defendant was a "high level drug trafficker." *Id.*

In *Moctezuma,* the improperly admitted evidence was offered for substantive purposes, to show the defendant's awareness of the drugs in the van. Here, the items about which defendant complains were admitted only for illustrative purposes; no attempt was made to link the defendant with the items. "It is an established principle of the law of evidence that a model of a place or a person or an object may be employed to illustrate the testimony of a witness so as to make it more intelligible to the . . . jury." *State v. See,* 301 N.C. 388, 391, 271 S.E.2d 282, 284 (1980).

C.J. testified that defendant used a tube with "black stuff" at the bottom and that he held a lighter under it, the "black stuff" was bubbling, and that defendant held the tube to her mouth and told her to

inhale. That drug paraphernalia was found in defendant's residence was unquestionably relevant to support her testimony, but would have little meaning to the jury without some explanation of the manner in which such paraphernalia could be used, since crack cocaine use is not within the life experience of most jurors. While no tubes were found in defendant's residence, plastic bag corners, metal rods, and metal sponge material were found. In his testimony, Investigator Wilborn explained what a "crack pipe" is, how it is made, and how it is used. To illustrate his explanation, he used the glass tubes to which defendant objects. We believe the use of the tubes for illustrative purposes to show the jury the manner in which crack cocaine can be used was helpful to an understanding of the significance of C.J.'s description of the events as well as to explain the relevance of the metal sponge material and metal rods found in defendant's residence. Likewise, Investigator Wilborn explained how crack cocaine is packaged in plastic bag corners by using pieces of crack cocaine, though none had been found in defendant's residence, to illustrate his testimony. This testimony was admissible to explain the relevance of the bag corners found in defendant's residence. Finally, to explain the relevance of the rolling papers found in defendant's residence, Investigator Wilborn was appropriately permitted to use the marijuana to illustrate his testimony that marijuana and crack cocaine can be mixed and smoked in rolling paper. We find no prejudicial error in the trial court's ruling permitting Investigator Wilborn to use the exhibits to illustrate his testimony, especially in view of the careful and repeated limiting instructions given by the trial court, in which the court emphasized to the jury that the exhibits were not seized from the defendant, were not linked to him, and were to be considered only for the purpose of illustrating and explaining Investigator Wilborn's testimony. See State v. Moore, 335 N.C. 567, 440 S.E.2d 797 (1994); State v. See, supra; State v. McLeod, 17 N.C. App. 577, 194 S.E.2d 861 (1973).

III.

[3] Defendant lastly assigns error to the trial court's denial of his motion to remove and replace a juror after the juror reported that a law enforcement officer had spoken to her about the trial outside the courtroom. The record shows that after the evidence was completed on a Friday, the jury was excused for the weekend. Upon the return of the jury on the following Monday, and prior to receiving the jury instructions, Juror Hall sent the following written communication to the court:

For Your Information:

On Friday afternoon another unknown Sheriff approached me and asked "shouldn't you have left that badge in the courthouse." I replied, "no, the judge instructed us to wear them to and from court." He seemed to doubt me still, and I told him it was a long case. He then asked, "is that the case where they gave the 9 yr old dope," I did not know what to do or say. Knowing I'm not supposed to talk about the case, however, he was a Sheriff. I just shook my head even though he did not know the specifics.

Just wanted to let you know, made me very uncomfortable.

Defendant contends the trial court abused its discretion in not replacing the juror upon learning of the improper contact. We disagree.

Where it is brought to the trial court's attention that there has been outside contact with a juror, it is the duty of the trial court to inquire and to determine the nature of the contact and whether it resulted in substantial and irreparable prejudice to the defendant. *State v. Garner*, 340 N.C. 573, 459 S.E.2d 718 (1995), *cert. denied*, 516 U.S. 1129, 133 L. Ed. 2d 872 (1996). The scope of the inquiry is within the discretion of the trial court. *Id.*

In the present case, upon receipt of the note, the trial court, with agreement of counsel for the State and defendant, conducted an inquiry of the juror which established that the person who had made the comment to her had no connection to the case or the trial. In addition, the juror stated unequivocally that nothing about the incident would affect her consideration in any way, that she would exclude the incident from her consideration, and that she would decide the case based solely on the evidence presented in the courtroom and law as explained by the court. The trial court found and concluded, from the inquiry, that the juror was "able to decide the case solely on the evidence presented and exclude any contact—any effects of the contact by mentioning her communication to the Court and as she said to the court in the courtroom." The trial court was in a position to observe the juror and to measure her responses, which satisfied the court that the comment of the deputy had not tainted the juror. We discern no abuse of discretion in the trial court's decision. *See State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44 (1997). This assignment of error is overruled.

No error.

Judges TYSON and THOMAS concur.