STATE OF NORTH CAROLINA v. RICKY DEAN NORMAN

No. COA10-1108

(Filed 5 July 2011)

### 1. Evidence— lay opinion—impairment at scene of accident

The trial court did not abuse its discretion in a prosecution for second-degree murder, driving while impaired, and other offenses by allowing a lay bystander at the scene to testify to his opinion that defendant was impaired. The conditions under which the witness observed defendant went to the weight rather than the admissibility of the testimony.

### 2. Evidence— prior arrests—not prejudicial

The defendant in a prosecution for second-degree murder, driving while impaired, and other offenses did not show that there was a reasonable possibility of a different result had evidence of prior arrests for possession of drug paraphernalia and resisting and delaying an officer not been admitted. Overwhelming evidence of defendant's guilt was presented at trial.

### 3. Witnesses— expert—no degree or certification—practical experience

The trial court did not err in a prosecution for second-degree murder, driving while impaired, and other offenses by qualifying a witness as an expert in forensic blood alcohol physiology and pharmacology, breath and blood alcohol testing, and the effects of drugs on human performance and testing. Despite the witness's lack of a formal degree or certification, his extensive practical experience qualified him to testify as an expert.

### 4. Evidence— expert testimony—amount of cocaine in system—effect on driving—reliable methods

The trial court did not err in a prosecution for second-degree murder and other offenses by admitting expert testimony about the amount of cocaine in defendant's system and the effects of cocaine on the ability to drive. The witness's testimony that the level of cocaine in defendant's system would have been higher at the time of the collision, and his testimony as to the general effects of cocaine on a person's ability to drive, were supported by reliable methods.

**5. Homicide— second-degree murder—malice and proximate cause—sufficiency of evidence**

There was sufficient evidence of malice and proximate cause in a second-degree murder prosecution arising from impaired driving where there was evidence that defendant had been drinking and was impaired; that he had ingested cocaine, which correlates to high-risk driving; that he was speeding; that he had prior convictions; and that his actions were a proximate cause of the victims' deaths. A left-hand turn by the victims was foreseeable, and, although the victims failed to yield the right-of-way to defendant, there was substantial evidence that defendant's speeding and driving while impaired were concurrent proximate causes.

**6. Sentencing— personal bias—insistence on trial**

The trial court did not abuse its discretion when sentencing defendant for second-degree murder and other offenses arising from impaired driving where defendant contended that the trial court impermissibly based defendant's sentence on the decision to contest the charges and on personal bias against defendant.

Appeal by Defendant from judgment entered 4 August 2009 by Judge Carl R. Fox in Superior Court, Wilkes County. Heard in the Court of Appeals 21 February 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for the State.*

*William D. Auman for Defendant.*

McGEE, Judge.

Ricky Dean Norman (Defendant) was convicted on 4 August 2009 of two counts of second-degree murder, driving while impaired, failure to reduce speed to avoid an accident, and exceeding the posted speed. The trial court determined Defendant's prior conviction level to be III, and sentenced Defendant to two consecutive prison sentences of 200 months to 249 months, and a concurrent sentence of 12 months. Defendant appeals.

*Factual Background*

The evidence at trial tended to show the following. Shortly after 5:30 p.m. on 26 March 2007, Defendant was driving south on Old U.S. Highway 21 (Highway 21) in Elkin. Victims Harley and Helen Carter (the Carters) were driving east on Pleasant Ridge Road. Harley Carter

STATE v. NORMAN

[213 N.C. App. 114 (2011)]

attempted a left-hand turn onto Highway 21 from Pleasant Ridge Road. The front of Defendant's truck collided with the driver's side of the Carters' sedan. The Carters died at the crash site. Defendant was exceeding the posted speed limit of forty-five miles per hour, and the Carters failed to yield the right-of-way to Defendant.

David McCandless (Mr. McCandless), the State's accident reconstruction expert, testified that, at a distance of seventeen feet before impact, he calculated Defendant's speed to be approximately seventy-five miles per hour, and at the time of impact, to be approximately sixty miles per hour. Trooper Charles Olive (Trooper Olive) of the North Carolina Highway Patrol, an accident reconstruction expert, provided similar testimony regarding Defendant's speed at the time of impact. Trooper Olive testified that, in his opinion, based on the average person's perception-reaction time, had Defendant been traveling the posted speed limit, Defendant could have avoided the collision by veering to the right or by braking.

Toby Groce (Mr. Groce) testified that he was driving north on Highway 21 and turned left onto Pleasant Ridge Road less than two seconds before the collision. Mr. Groce observed Defendant's vehicle and saw that it was "definitely speeding," traveling about "fifty-two, fifty-five and above[.]" Mr. Groce estimated that, at the time Harley Carter began his left-hand turn onto Highway 21, Defendant was about 250 to 300 feet away from the intersection of Highway 21 and Pleasant Ridge Road. After hearing a collision, Mr. Groce stopped his vehicle and ran towards the accident. Mr. Groce detected a strong odor of alcohol emanating from Defendant at "a little over [an] arm's [length] distance" from Defendant. Based on the odor of alcohol and Defendant's behavior, Mr. Groce formed the opinion that Defendant was impaired.

Andrew Webb (Mr. Webb), Defendant's accident reconstruction expert, testified that he calculated Defendant's speed at the time Defendant braked in an attempt to avoid the collision, to be approximately sixty to sixty-five miles per hour prior. Mr. Webb determined that Defendant's speed, "just before impact[,]" was approximately fifty-nine miles per hour. Mr. Webb also determined that Defendant would have had between one-half and one and one-half seconds to react to the Carters' failure to yield the right-of-way.

Trooper Chris Anderson (Trooper Anderson), of the North Carolina Highway Patrol, testified that he responded to the call regarding the accident. Trooper Anderson reached the collision scene

at 6:28 p.m. and was told by fire department responders that the Carters were deceased and that Defendant had been taken to Hugh Chatham Memorial Hospital (Chatham Memorial). Trooper Anderson smelled a strong odor of alcohol coming from Defendant's truck and he observed several open, empty beer cans inside Defendant's truck.

Trooper Anderson interviewed Defendant at Chatham Memorial at approximately 7:30 p.m. Based on the strong odor of alcohol on Defendant's breath, along with Defendant's appearance and behavior, Trooper Anderson formed the opinion that Defendant was "very noticeabl[y]" impaired. Defendant told Trooper Anderson that he had consumed four beers between 1:30 p.m. and 3:00 p.m. that day, and that he had been traveling at "fifty to fifty-three miles per hour" on Highway 21. Defendant denied taking any prescription, or illegal, drugs that day.

Trooper Anderson charged Defendant with driving while impaired and asked that Defendant submit to a blood test, and Defendant consented. The blood test was administered at Chatham Memorial at 8:06 p.m. that evening and was later submitted to the State Bureau of Investigation (SBI) for analysis. The SBI's analysis of Defendant's blood sample revealed a blood alcohol level of 0.03. The SBI's analysis also revealed cocaine and cocaine metabolites in Defendant's blood sample. Trooper Anderson filled out an accident report which noted that the causes of the collision were Defendant's speeding, Defendant's impairment, and the Carters' failure to yield the right-of-way from a stop sign onto a roadway.

After treatment at Chatham Memorial, Defendant was transferred later that evening to Wake Forest University Baptist Medical Center (Baptist Hospital). A blood serum sample was taken from Defendant at Baptist Hospital at 8:49 p.m. that same evening.

Paul Glover (Mr. Glover) testified for the State "as an expert in the field[s] of forensic blood alcohol physiology and pharmacology, breath and blood alcohol testing[,] and the effects of drugs on human performance and behavior." Mr. Glover testified that, based on the sample of Defendant's blood taken at Baptist Hospital, he determined Defendant's blood alcohol level to be 0.01. Dr. Andrew Mason (Dr. Mason) testified for Defendant as an expert in forensic toxicology. Dr. Mason testified that he used Defendant's same 8:49 p.m. blood sample and determined Defendant's blood alcohol level to be anywhere between 0.009 to 0.014. A urine sample taken from Defendant

at Baptist Hospital that same evening tested positive for cocaine and cocaine metabolites.

Mr. Glover also testified that, based on the alcohol content of the two blood samples taken from Defendant shortly after the crash, he determined Defendant's blood alcohol level at the time of the collision to be 0.08. Mr. Glover also testified that the "half-life of cocaine is in the range of forty-five minutes to maybe an hour and a half." Based on the short half-life of cocaine and Baptist Hospital's report showing unmetabolized cocaine was present in Defendant's system, Mr. Glover determined that Defendant had recently used cocaine and that the concentration of cocaine in Defendant's system "would have been higher at the time of the crash." Mr. Glover further testified to the correlation between the effects of cocaine and "high-risk driving[.]"

Dr. Mason disagreed with the reliability and accuracy of Mr. Glover's methods in determining Defendant's blood alcohol level at the time of the collision. Dr. Mason agreed with Mr. Glover as to the average half-life of cocaine. Dr. Mason was of the opinion that Defendant had been exposed to cocaine within nine hours prior to the time Defendant's blood samples were taken. However, because a person can test positive for cocaine after the effects of the cocaine have worn off and because there was no quantitative measure of the amount of cocaine in Defendant's system, Dr. Mason testified there was no reliable method to determine whether Defendant was impaired by cocaine at the time of the collision.

Pam Stafford of the Wilkes County District Attorney's office testified that Defendant had been convicted of driving while impaired on four previous occasions. Trooper Robin Chandler (Trooper Chandler), a retired North Carolina Highway Patrol trooper; Trooper Steve Grizzell (Trooper Grizzell) of the North Carolina Highway Patrol; and Officer Ryan Preslar (Officer Preslar) of the Elkin Police Department, each testified regarding the circumstances of three of Defendant's prior driving while impaired arrests.

At the close of all the evidence, Defendant moved to dismiss. The trial court denied Defendant's motion. The jury convicted Defendant of all charges. Further facts will be introduced as required in the opinion.

### I. Lay Opinion Testimony

[1] Defendant first argues that the trial court abused its discretion by allowing Mr. Groce, a lay witness, to testify that Defendant was impaired. We disagree.

"[W]hether a lay witness may testify as to an opinion is reviewed for abuse of discretion." *State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000) (citation omitted). "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." N.C. Gen. Stat. § 8C-1, Rule 602 (2009). Lay witness "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2009).

" 'A lay witness is competent to testify whether or not in his opinion a person was drunk or sober on a given occasion on which he observed him.' " *State v. Strickland*, 321 N.C. 31, 37, 361 S.E.2d 882, 885 (1987) (citation omitted). " 'The conditions under which the witness observed the person, and the opportunity to observe him, go to the weight, not the admissibility, of the testimony.' " *Id.* (citation omitted). In *Strickland*, "[a witness] testified that he was with [the] defendant at [a] bootlegger's house and saw [the] defendant take a drink." *Id.* The *Strickland* Court held that "[s]ince [the witness] had the opportunity to observe [the] defendant, [the witness] was competent to give his opinion as to whether [the] defendant was intoxicated at that time." *Id.*

Similarly, "a lay witness may state his opinion as to whether a person is under the influence of drugs when the witness has observed the person and such testimony is relevant to the issue being tried." *State v. Lindley*, 23 N.C. App. 48, 50, 208 S.E.2d 203, 204 (1974) (citations omitted). In *Lindley*, our Court found no abuse of discretion where the trial court admitted lay witness testimony that the defendant was under the influence of drugs.

> Asked by the solicitor to summarize upon what he based [his] opinion, the [witness] testified: "On the way [the defendant] drove his car, the way he walked, acted, talked. He was incoherent at times. His eyes were contracted. His pupils rather were contracted. He seemed to be in a daze, in a stupor."

*Lindley*, 23 N.C. App. at 49, 208 S.E.2d at 204.

Mr. Groce testified that, after he heard the sound of the collision, he immediately parked his car and ran to the crash site. Mr. Groce

detected a strong smell of alcohol on Defendant at "a little over [an] arm's [length] distance" from Defendant. During *voir dire*, Mr. Groce said he formed the opinion that Defendant was impaired because of the strong smell of alcohol and because Defendant "was unable to maintain balance, was incoherent, was acting in an inebriated fashion," and was disoriented. Therefore, Mr. Groce's opinion was based on personal observation of Defendant immediately after the collision.

Defendant nevertheless contends that Mr. Groce's opinion testimony was improperly admitted because Mr. Groce testified that Defendant never responded to Mr. Groce and that Mr. Groce was unaware of the exact nature of Defendant's injuries. However, the conditions under which Mr. Groce observed Defendant " 'go to the weight, not the admissibility, of the testimony.' " *Strickland,* 321 N.C. at 37, 361 S.E.2d at 885 (citation omitted). The trial court did not abuse its discretion by allowing Mr. Groce to testify to his opinion that Defendant was impaired. Defendant's argument is without merit.

## II. *Circumstances of Defendant's Prior Driving While Impaired Arrests*

[2] Defendant next argues that the trial court committed prejudicial error by admitting testimony regarding additional offenses with which Defendant had been charged in connection with Defendant's prior driving while impaired arrests. We disagree.

Defendant concedes that his prior driving while impaired convictions were relevant for the purpose of proving malice. However, he argues that the circumstances surrounding the arrests were dissimilar from those of the present case and should have been excluded as irrelevant. Defendant further argues that, even if evidence of the specific circumstances of his prior driving while impaired arrests was somewhat relevant to prove malice, the evidence should have been excluded pursuant to N.C. Gen. Stat. § 8C-1, Rule 403 because any probative value of the evidence was substantially outweighed by the danger of unfair prejudice to Defendant.

Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2009).

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other

purposes, such as proof of motive, opportunity, intent, prepara-
tion, plan, knowledge, identity, or absence of mistake, entrap-
ment or accident.

N.C. Gen. Stat. § 8C–1, Rule 404(b) (2009). "Although relevant, evidence
may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2009).

> Even where evidence is erroneously admitted because it is irrele-
> vant or prejudicial, the defendant has the burden of showing that
> the error was not harmless, that "there [was] a reasonable possi-
> bility that, had the error in question not been committed, a dif-
> ferent result would have been reached at the trial[.]"

*State v. Hyman,* 153 N.C. App. 396, 402, 570 S.E.2d 745, 749 (2002)
(quoting N.C. Gen. Stat. § 15A-1443(a) (2002)).

In the present case, the State presented evidence of the specific
circumstances surrounding three of Defendant's prior driving while
impaired arrests. Trooper Chandler testified that he arrested Defend-
ant in 1995 for driving while impaired, reckless driving, and resisting
and delaying an officer after Defendant fled from a highway check-
point. Trooper Grizzell testified that he arrested Defendant in 2001 for
driving while impaired after Defendant drove his truck into an
embankment in a single-car accident. Officer Preslar testified that he
arrested Defendant in 2006 for driving while impaired and possession
of drug paraphernalia. Officer Preslar testified that he had observed
two pipes in Defendant's front seat and, after another officer found a
wrapper beside Defendant's truck that tested positive for cocaine, he
determined that the two pipes were used to smoke cocaine.

Assuming, without deciding, that the trial court erroneously
admitted evidence regarding Defendant's previous arrests for posses-
sion of drug paraphernalia and resisting and delaying an officer,
Defendant has not met his burden of showing "that the error was not
harmless, that 'there [was] a reasonable possibility that, had the error
in question not been committed, a different result would have been
reached at the trial[.]' " *Hyman,* 153 N.C. App. at 402, 570 S.E.2d at
749 (quoting N.C. Gen. Stat. § 15A-1443(a) (2002)).

Overwhelming evidence of Defendant's guilt was presented at
trial. Trooper Anderson testified that Defendant admitted to drinking
four beers during the afternoon of the accident, and to speeding.
Multiple witnesses described a strong odor of alcohol emanating

STATE v. NORMAN

[213 N.C. App. 114 (2011)]

from Defendant and they were of the opinion that Defendant was impaired. Mr. Glover testified that Defendant's blood alcohol level at the time of the collision was 0.08. Dr. Mason testified that Defendant's blood alcohol level at the time of the collision was between 0.05 and 0.094. Mr. McCandless testified that, at a distance of seventeen feet before impact, Defendant was driving approximately seventy-five miles per hour in a forty-five mile per hour zone. Mr. Webb testified that Defendant, prior to the time of Defendant's braking in an attempt to avoid the collision, was driving approximately sixty to sixty-five miles per hour. Moreover, the State presented undisputed evidence that Defendant had four prior driving while impaired convictions— evidence from which the jury could determine malice for the second-degree murder charges.

Defendant has therefore failed to show that there was a reasonable possibility, had the evidence of his prior arrests for possession of drug paraphernalia and resisting and delaying an officer not been admitted, a different result would have been reached at trial. Accordingly, even assuming *arguendo* that admission of the contested evidence was error, Defendant has failed to show that the admission of that evidence was prejudicial. Defendant's argument is without merit.

### III. Qualification of Mr. Glover as an Expert Witness

[3] Defendant's third argument is that the trial court abused its discretion by qualifying Mr. Glover as an expert in the fields of forensic blood alcohol physiology and pharmacology, breath and blood alcohol testing, and the effects of drugs on human performance and behavior. We disagree.

Our Supreme Court has set forth "a three-step inquiry for evaluating the admissibility of expert testimony: (1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citations omitted). At issue in Defendant's third argument is the second inquiry: whether Mr. Glover was properly qualified as an expert. "[A] trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Id.* at 458, 597 S.E.2d at 686 (citations omitted).

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2009), provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to

understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion."

> "It is not necessary that an expert be experienced with the identical subject matter at issue or be a specialist, licensed, or even engaged in a specific profession." "It is enough that the expert witness 'because of his expertise is in a better position to have an opinion on the subject than is the trier of fact.' "

*State v. Goode*, 341 N.C. 513, 529, 461 S.E.2d 631, 640 (1995) (citations omitted). "As pertains to the sufficiency of an expert's qualifications, we discern no qualitative difference between credentials based on formal, academic training and those acquired through practical experience." *Howerton*, 358 N.C. at 462, 597 S.E.2d at 688.

Defendant contends that the improper qualification found by our Court in *Martin v. Benson*, 125 N.C. App. 330, 481 S.E.2d 292 (1997), *rev'd on other grounds*, 348 N.C. 684, 500 S.E.2d 664 (1998), supports his argument that Mr. Glover was improperly qualified as an expert. In *Martin*, our Court held that the trial court abused its discretion by qualifying a neuropsychologist to testify regarding expert issues of medical causation. *Id.* at 337, 481 S.E.2d at 296. *Martin*, however, is distinguishable from the present case because the *Martin* Court relied upon statutory definitions of psychology to reach the decision "that the practice of psychology does not include the diagnosis of medical causation." *Id.* at 336-37, 481 S.E.2d at 295-96. Defendant has not presented any similar statutory definition of pharmacologist or physiologist which would affect the trial court's discretion to qualify Mr. Glover as an expert in this case. *Martin* does not control our decision.

At trial, Mr. Glover testified that he was the head of the Forensic Test for Alcohol branch of the North Carolina Department of Health and Human Services. Mr. Glover oversaw the training of law enforcement officers on the operation of alcohol breath test instruments. He also oversaw training "for drug recognition experts" who "observ[ed] [the] effects of drugs in individuals." Mr. Glover characterized the subject matter of his specialty as "scientific issues related to breath testing and blood testing for drugs and alcohol." Mr. Glover holds a bachelor of science and a master's degree in biology and is "certified as a chemical analyst on the breath test instruments [used] in [North Carolina.]" Mr. Glover attended a thirty-six hour course at Indiana University in 1998 regarding the effects of alcohol on the human body and "the various methods for determining alcohol concentrations."

Mr. Glover subsequently attended a twenty-eight hour course at Indiana University regarding "the effects of drugs on human psychomotor performance."

Mr. Glover has published several works regarding his current occupation, including: "a study on the effects of interfering substances on breath alcohol testing" and a "presentation on the effects of heat on blood samples containing alcohol[.]" Notably, Mr. Glover has previously been qualified as an expert in forensic blood alcohol physiology and pharmacology, breath and blood alcohol testing, and the effects of drugs on human performance and behavior over 230 times in North Carolina. He has testified "in about seventy different counties[,]" in district court, superior court, and in federal court.

Despite Mr. Glover's lack of a formal degree or certification in the fields of physiology and pharmacology, his extensive practical experience in these fields qualifies him to testify as an expert. *See Howerton*, 358 N.C. at 462, 597 S.E.2d at 688 ("[W]e discern no qualitative difference between credentials based on formal, academic training and those acquired through practical experience."). At the very least, Mr. Glover was " ' "in a better position to have an opinion on the subject[s] than [was] the trier of fact." ' " *Goode*, 341 N.C. at 529, 461 S.E.2d at 640 (citation omitted). The trial court did not abuse its discretion by qualifying Mr. Glover as an expert. Defendant's argument is without merit.

## IV. Reliability of Mr. Glover's Expert Opinion

[4] Defendant's fourth argument is that the trial court abused its discretion by admitting Mr. Glover's expert testimony regarding the relative amount of cocaine in Defendant's system at the time of the collision and the effects of cocaine on an individual's ability to drive, because the testimony was based upon unreliable methods. We disagree.

At issue in Defendant's fourth argument is the first step of the three-step inquiry for expert testimony set out in *Howerton*: "Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony?" *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686 (citation omitted).

[R]eliability is . . . a preliminary, foundational inquiry into the basic methodological adequacy of an area of expert testimony. This assessment does not, however, go so far as to require the expert's testimony to be proven conclusively reliable or indisputably valid before it can be admitted into evidence. In this

regard, we emphasize the fundamental distinction between the admissibility of evidence and its weight, the latter of which is a matter traditionally reserved for the jury.

*Id.* at 460, 597 S.E.2d at 687 (citation omitted). "[A] trial court's ruling on the . . . admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Id.* at 458, 597 S.E.2d at 686 (citations omitted).

Mr. Glover testified that he reviewed a report of a urine sample taken from Defendant at Baptist Hospital and that the report showed the presence of cocaine and cocaine metabolites. The evidence at trial tended to show that these substances were not given to Defendant as part of Defendant's medical treatment. Mr. Glover testified that the "half-life of cocaine is in the range of forty-five minutes to maybe an hour and a half." Mr. Glover explained that a half-life is measured by the amount of time "it take[s] for . . . the body to break down or reduce the concentration of a given drug by half." Based on the short half-life of cocaine, and the Baptist Hospital report showing that unmetabolized cocaine was present in Defendant's system, Mr. Glover determined that Defendant had recently used cocaine and that the concentration of cocaine in Defendant's system "would have been higher at the time of the crash." On cross-examination, Mr. Glover testified that there was no way, based upon the information he was given, to determine "the quantity of cocaine that was in [Defendant's] system."

Mr. Glover further testified as to the general effects of cocaine on a person's ability to drive. He noted that there is a correlation between "high-risk driving, speeding, [and] sometimes fleeing . . . when cocaine is present in individuals." Mr. Glover based this testimony on a study which "looked at crashes and behaviors and found [an] association or correlation between the presence of cocaine and high-risk driving." Mr. Glover also testified that it was possible for cocaine to be detected in a person's system even after the person was no longer impaired by the cocaine.

Thus, Mr. Glover's testimony that the level of cocaine in Defendant's system would have been higher at the time of the collision, and his testimony as to the general affects of cocaine on a person's ability to drive, was supported by reliable methods. Notably, Defendant's own expert corroborated Mr. Glover's testimony both as to the half-life of cocaine and as to the existence of studies which show a correlation between the effects of cocaine and "high-risk" driving.

Accordingly, the trial court did not abuse its discretion by admitting Mr. Glover's testimony regarding Defendant's use of cocaine on the day of the accident or the general effects of cocaine on a person's ability to drive. Defendant's argument is without merit.

*V. Motion to Dismiss Second-Degree Murder Charges for Insufficient Evidence*

**[5]** Defendant's fifth argument is that the trial court erred by failing to dismiss his second-degree murder charges because the evidence, when viewed in the light most favorable to the State, was insufficient to show malice and proximate cause. We disagree.

"In ruling on a motion to dismiss, the trial court must view all of the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence." *State v. McAllister*, 138 N.C. App. 252, 259, 530 S.E.2d 859, 864 (2000) (citation omitted). "A motion to dismiss must be denied where substantial evidence exists of each essential element of the crime charged and of the defendant's identity as the perpetrator." *Id.* at 259-60, 530 S.E.2d at 864 (citation omitted). " 'Substantial evidence' is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 260, 530 S.E.2d at 864 (citation omitted).

" 'Second-degree murder is an unlawful killing with malice, but without premeditation and deliberation.' " *State v. Bethea*, 167 N.C. App. 215, 218, 605 S.E.2d 173, 176 (2004) (citation omitted). "The elements of second-degree murder are: '1. defendant killed the victim; 2. defendant acted intentionally and with malice; and 3. defendant's act was a proximate cause of the victim's death.' " *Id.* at 218, 605 S.E.2d at 177 (quoting *State v. Bostic*, 121 N.C. App. 90, 98, 465 S.E.2d 20, 24 (1995)). "Sufficient evidence of malice exists . . . where the defendant's acts show cruelty, recklessness of consequences, . . . or manifest a total disregard for human life." *McAllister*, 138 N.C. App. at 260, 530 S.E.2d at 864 (citations omitted).

> The State need not show that the defendant intended to kill in order to establish malice for [second-degree] murder, but instead may meet its burden by showing that the defendant "had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind."

*Id.* (quoting *State v. Rich*, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000)).

The State presented substantial evidence that, when viewed in the light most favorable to the State, supports a finding that Defendant acted with malice. Defendant admitted that he drank four beers prior to driving on the day of the collision. Mr. Glover calculated Defendant's blood alcohol level to be 0.08 at the time of the collision. Mr. Groce and Trooper Anderson both testified that, in their opinion, Defendant was impaired. The evidence at trial also tended to show that Defendant ingested cocaine within nine hours prior to the administration of Defendant's 8:49 p.m. blood sample, and that the effects of cocaine are correlated with high-risk driving. Defendant admitted that he was speeding at the time of the collision, and the State's experts calculated Defendant's speed to be approximately fifteen miles per hour over the posted speed at the time of the collision. The State also introduced evidence that Defendant had four prior driving while impaired convictions. Taken together and viewed in the light most favorable to the State, this is substantial evidence that Defendant acted with malice.

There is also substantial evidence that Defendant's actions were a proximate cause of the Carters' deaths.

> Proximate cause is defined "as a cause: (1) which, in a natural and continuous sequence and unbroken by any new and independent cause, produces an injury; (2) without which the injury would not have occurred; and (3) from which a person of ordinary prudence could have reasonably foreseen that such a result, or some similar injurious result, was probable under the facts as they existed."

*Bethea,* 167 N.C. App. at 220, 605 S.E.2d at 178 (quoting *State v. Hall,* 60 N.C. App. 450, 454-55, 299 S.E.2d 680, 683 (1983)). "Accordingly, '[a] defendant will be held criminally responsible for second-degree murder if his act caused or directly contributed to the victim's death.' " *Id.* (quoting *State v. Welch,* 135 N.C. App. 499, 502-03, 521 S.E.2d 266, 268 (1999)). "In order for negligence of another to insulate defendant from criminal liability, that negligence must be such as to break the causal chain of defendant's negligence; otherwise, defendant's culpable negligence remains a proximate cause, sufficient to find him criminally liable." *State v. Hollingsworth,* 77 N.C. App. 36, 39, 334 S.E.2d 463, 465 (1985) (citation omitted). "There may be more than one proximate cause and criminal responsibility arises when the act complained of caused or directly contributed to . . . the death." *Id.* (citation omitted).

Defendant argues that two unforeseeable events proximately caused the Carters' deaths: (1) Mr. Groce's left-hand turn onto Pleasant Ridge Road, and (2) the Carters' failure to yield the right-of-way to Defendant. Defendant concludes that these unforeseeable events serve to break the causal chain between Defendant's actions and the Carters' deaths and thereby isolate Defendant from criminal liability. We are not persuaded. Initially, we note that Mr. Groce's left-hand turn onto Pleasant Ridge Road, which briefly blocked the Carters' car from Defendant's view as Defendant approached the site of the collision, was not unforeseeable and does not serve to isolate Defendant from liability.

As Defendant contends, the evidence at trial tended to show that the Carters' failure to yield the right-of-way to Defendant was a proximate cause of the collision. However, there was also substantial evidence that Defendant's actions of speeding and driving while impaired were concurrent proximate causes. The evidence tended to show that Defendant was between 250 and 300 feet from the site of the collision when the Carters began their turn onto Highway 21. From this evidence, the jury could determine that it was reasonably foreseeable that the Carters would pull out onto Highway 21 where the posted speed limit was forty-five miles per hour. The State's expert testified that, had Defendant been driving at the posted speed limit, Defendant could have avoided the collision by braking or by veering to the right. There was also substantial evidence that tended to show that Defendant was impaired at the time of the collision. Thus, when viewed in the light most favorable to the State, there was substantial evidence that Defendant's actions were concurrent proximate causes of the Carters' deaths and the trial court did not err by submitting the second-degree murder charges to the jury. Defendant's argument is without merit.

### VI. Calculation of Defendant's Sentence

**[6]** Defendant's final argument is that the trial court abused its discretion by impermissibly basing Defendant's sentence on "[D]efendant's decision to contest the charges" and on personal bias against Defendant in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections Nineteen, Twenty-Three, and Twenty-Seven of the North Carolina Constitution. Defendant specifically contends that "[a]bsent . . . [D]efendant's colloquy with the trial court [prior to sentencing], his judgments may well have been concurrent as opposed to consecutive."

"If an offender is convicted of more than one offense at the same time, the court may consolidate the offenses for judgment and impose a single judgment for the consolidated offenses." N.C. Gen. Stat. § 15A-1340.15(b) (2009). However, N.C.G.S. § 15A-1340.15 gives discretion to the trial court and "does not prohibit the imposition of consecutive sentences." N.C.G.S. § 15A-1340.15(a). "A sentence within statutory limits is 'presumed to be regular.' " *State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002) (quoting *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977)). "Where the record, however, reveals the trial court considered an improper matter in determining the severity of the sentence, the presumption of regularity is overcome." *Id.* (citation omitted).

Defendant cites to *State v. Cannon*, 326 N.C. 37, 387 S.E.2d 450 (1990); *State v. Hueto*, 195 N.C. App. 67, 671 S.E.2d 62 (2009); *Peterson*, 154 N.C. App. 515, 571 S.E.2d 883; and *State v. Pavone*, 104 N.C. App. 442, 410 S.E.2d 1 (1991), in support of his argument. In *Cannon*, our Supreme Court found a violation of the defendants' constitutional rights to trial by jury where, "[u]pon being advised that defendants demanded a jury trial, the trial judge told counsel in no uncertain terms that if defendants were convicted he would give them the maximum sentence." *Cannon*, 326 N.C. at 38-39, 387 S.E.2d at 451. In *Hueto*, our Court found that the trial court considered an improper factor where the "trial court's decision to impose eight consecutive sentences was partially based on [d]efendant's decision to plead not guilty[.]" *Hueto*, 195 N.C. App. at 78, 671 S.E.2d at 69. In *Peterson*, our Court found that the trial court "improperly considered [d]efendant's decision to exercise his right to a jury trial[,]" 154 N.C. App. at 518, 571 S.E.2d at 885, where

[a]t sentencing, the trial court stated [d]efendant "tried to be a con artist with the jury," and he "rolled the dice in a high stakes game with the jury, and it's very apparent that [he] lost that gamble." Further, the court stated the evidence of guilt was "such that any rational person would never have rolled the dice and asked for a jury trial with such overwhelming evidence."

*Id.* Similarly, in *Pavone*, our Court found that the "trial court improperly considered defendant's . . . exercise of her constitutional right to a jury trial" where it stated that defendant was " 'in a different posture' " for sentencing because defendant did not plead guilty. *Pavone*, 104 N.C. App. at 446, 410 S.E.2d at 3.

In the present case, the trial court sentenced Defendant to two consecutive prison sentences of 200 months to 249 months for second-degree murder, and a concurrent sentence of 12 months for driving while impaired. These sentences fall within the presumptive range for Defendant's prior conviction level of III and Defendant's classes of offense. See N.C. Gen. Stat. § 15A-1340.17 (2009) ("Punishment limits for each class of offense and prior record level."); N.C. Gen Stat. § 14-17 (2009) (providing second-degree murder offense level); N.C. Gen. Stat. § 20-179 (2009) (providing punishment levels for driving while impaired). Because Defendant was sentenced within the presumptive range, Defendant's sentence is " 'presumed to be regular.' " Peterson, 154 N.C. App. at 517, 571 S.E.2d at 885 (quoting State v. Boone, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977)).

Defendant nevertheless contends that, as in Cannon, Hueto, Peterson, and Pavone, the trial court improperly considered Defendant's decision to contest the charges when sentencing Defendant. Unlike in those cases, however, the record in the present case does not give rise to the inference that the trial court considered Defendant's choice to exercise his constitutional right to a jury trial when sentencing Defendant. Defendant maintains that a pre-sentencing colloquy between the trial court and Defendant gives rise to the inference that the trial court, when sentencing Defendant, considered Defendant's decision to contest the charges. We disagree. During the colloquy the following exchanges occurred:

[DEFENDANT]: First of all, I was not impaired. I know on account of my record why I was convicted. That's the only thing. . . .

. . . .

THE COURT: But do you, do you think it's okay to drink four beers and then get into a car and drive?

[DEFENDANT]: Sure do.

. . . .

THE COURT: . . . Because you know what's wrong, the problem with the DWI law? Exactly what you just said, people trying to figure . . . how close they can get to the limit and still drive when they should be trying to figure out how to stay as far away from the limit if they're going to drive.

. . .

THE COURT: Mr. Norman, here's the problem, . . . With one, two, three, four, five prior DWIs if your mind is thinking that you should drink anything and drive it's messed up! It's messed up! If you think that it's okay after five DWIs to drink and drive anything out of your yard your mind is messed up, your reasoning is messed up! You're still thinking it's . . . okay. People [who] drink and drive and drive impaired always think it's okay.

. . . .

THE COURT: Even the people who blow thirty something still think they're okay. Now, I want you to be quiet because anything after, you say after this point is just going to cause me to raise the amount of time I give you in this case. . . . Mr. Norman, I'm tempted to give you the maximum sentence in this case but it's sort of counterproductive. You're fifty-five years old. I don't have to. If I give you thirty years you'll be eighty-five years old if you do the best you can do and you're in the minimum of sentences. If you get to the maximum, which is more up to two hundred forty-nine months, plus two hundred forty-nine months, you'll have to be one of the oldest people in North Carolina in order to get out. So I don't have to give you two twenty [-year sentences] back to back in order to do that. . . . I do believe that this accident happened . . . because the Carters pulled out of the intersection. But, the fact of the matter is . . . that you . . . make bad decisions that put yourself at risk and put other people at risk because you don't have an appreciation for alcohol and yourself and you still haven't learned and it's now been since 1973 that you keep experimenting and hoping that you're going to take this—well, since 1972—that you're willing to keep taking this chance. And the sad part is, just since 1990 you've been doing it more often rather than less often. And you stand up in court . . . and all you do by standing up in court is justify. And, let me tell you, that's appalling. You'd been a lot better off if you hadn't stood up and said one single solitary word, but you did. Sometimes you help yourself, sometimes you don't.

This colloquy raises the inference that the trial court took note of Defendant's insistence on his sobriety on the day of the collision and Defendant's insistence that driving after drinking four beers was "okay" despite Defendant's multiple driving while impaired convictions. However, the colloquy does not raise the inference that the trial court considered Defendant's choice not to plead guilty to the charges when sentencing Defendant.

Defendant also argues that the presentencing colloquy between the trial court and Defendant raises the inference that the trial court decided to make Defendant's second-degree murder sentences run consecutively because of the trial court's personal bias against Defendant. Defendant has not presented any authority which supports his contention. Moreover, the record does not reveal that the trial court considered any improper sentencing factors when deciding to make Defendant's sentences run consecutively.

Thus, the trial court did not abuse its discretion when deciding Defendant's sentence. Defendant's final argument is without merit.

No Error.

Chief Judge MARTIN and Judge McCULLOUGH concur.